**Joe DULAK, Appellant,**

v.

**Frank DULAK et al., Appellees.**

**No. 12025.**

Court of Civil Appeals of Texas, Austin.

May 9, 1973.

Rehearing Denied June 20, 1973.

Kirk Kuykendall, Kuykendall & Kuykendall, Austin, for appellant.

Robert C. (Lou) McCreary, Arthur Mitchell, Mitchell, Yeakel, Orr & Trickey, Austin, Joe N. Johnson, Waco, for appellees.

SHANNON, Justice.

Appellees[1] filed suit in the district court of Travis County against their brother, appellant, Joe Dulak, individually,[2] to recover

1. Appellees are brothers and sisters, and children of Constance Dulak. They are Frank Dulak, August Dulak, Raymond Dulak, Ernest Dulak, Mrs. Frank Mach, Jr., Mrs. Victor Novasod, Mrs. Fred Brown, and Mrs. W. C. Zatopek.

2. Appellant, Joe Dulak, is before this Court both individually and as independent executor of the estate of Constance Dulak. As will be noticed in the opinion, appellant, as independent executor, intervened in the suit shortly before trial.

damages for conversion of certain assets possessed by him and allegedly due them under the will of their father, Constance Dulak. Upon trial to a jury, judgment was entered for appellees. We will affirm that judgment.

In January of 1971, Constance Dulak, who was eighty-five, lived near Axtell in McLennan County. By reason of thrifty management, he had acquired a modest estate, having at that time on deposit about $28,000 in a Waco Bank, and a promissory note executed by appellant and his wife, Helen, with a principal balance due of about $15,200.00. The note and a deed of trust were given by appellant and wife to Constance in exchange for a deed to a farm located in McLennan County.

On January 10, 1971, Constance came to Austin to live with appellant. A short time later Constance returned to Mc-Lennan County and closed out his bank accounts. On February 9, 1971, he opened a joint bank account with appellant at an Austin bank. He deposited about $28,000.-00 in that account. Appellant testified that on the same day, Constance instructed him to write himself a check on the joint account for $10,000.00. Also, on the same day, Constance was admitted to Seton Hospital in Austin for surgery for cataracts. Upon release, he returned to appellant's trailer house on February 15.

Constance fell and broke his hip on February 25, in appellant's quarters. Appellant testified that after Constance had fallen and while they were waiting to get in touch with the physician, Constance dictated to appellant a release of the promissory note. Appellant's wife then was instructed to type the release and Constance signed.

On March 1, while his father was in the intensive care unit of the hospital, appellant purchased certificates of deposit in the sum of $14,000.00 with a draft on the joint account. These certificates of deposit were issued in the name of "Joe or Constance Dulak." Also, on the same day, appellant purchased certificates of deposit in

the sum of $10,000.00 with the check obtained from his father on February 9. This group of certificates of deposit was issued in the name of "Joe or Helen H. Dulak."

Constance was released from the hospital on March 19, but was admitted to another hospital on March 28, where he died on April 14.

By his will of September 25, 1970, Constance devised all of his property in equal shares to his nine children. The will was duly probated in Travis County. Appellant who qualified as independent executor of the estate filed an inventory with the probate court showing the assets of the estate to be $720.00. The inventory also showed the fourteen certificates of deposit payable to Joe or Constance Dulak, and a balance of $2,681.39 in the joint checking account in the bank. Neither the certificates of deposit, nor the balance in the checking account were shown as assets of the estate. Appellees did not oppose the probate of the will in the county court, and in their pleadings in this suit specifically affirmed the validity of the will.

Appellees alleged that upon the death of their father title to eight-ninths of all of his property, including the original sum of $28,000.00 mentioned above, and the promissory note of $15,250.00 vested in them, subject to the debts of the estate. They alleged further that appellant wrongfully retained the property and converted it to his own use.

With respect to the joint account with rights of survivorship claimed by appellant and the release of the promissory note, appellees alleged, among other things, that Constance Dulak lacked mental capacity or that he was acting under the undue influence of appellant. Appellees also alleged that the joint account was opened purely as a convenience account for Constance Dulak.

Appellees prayed for relief by way of cancellation of the release and all instru-

ments and checks pertaining to the joint account. In the alternative, if restoration of their interest of the estate proved to be impossible, appellees prayed that they recover damages from appellant in a sum representing eight-ninths of the value of the estate. Appellees also requested exemplary damages on account of the alleged conversion of the property, the exercise of undue influence, and other conduct of appellant.

In response, appellant claimed that the $14,000.00 sum represented by the certificates of deposit was in a joint account with right of survivorship, and that upon the death of his father that sum became his by the terms of that contract. Appellant averred further that the $10,000.00 check to him from his father represented a gift, and that the release of the promissory note was a forgiveness of the debt and resulted in his being the owner of the farm free of indebtedness.

By answers to special issues the jury found that Constance Dulak signed the joint account signature card for the limited purpose of providing a convenient method for the payment of his expenses while incapacitated. The jury answered further that at the time Constance signed the $10,000.00 check payable to appellant, and at the time he signed the release of the promissory note he was acting under the undue influence of appellant, and that in exercising such undue influence, appellant acted with malice. The jury also determined that appellant was entitled to be reimbursed for services rendered as executor of the estate in the sum of $1,800.00. For the exercise of the undue influence by appellant upon Constance the jury found that appellant should be assessed $4,644.00 as exemplary damages.

The judgment allowed appellees recovery of $20,358.39 which represented eight-ninths of the sum of money taken by appellant, after deduction of all expenses incurred by appellant as executor of the estate. The judgment also provided for cancellation of the release of the promissory note and decreed that the note was overdue and in default. The appellees were made coholders of the note, but appellant was allowed a period of time to bring the note current.

Appellant's brief contains twenty-five points of error, the first being that the court erred in failing to hold that appellees' rights under the will of their father had not terminated by their filing suit in violation of the *in terrorem* clause of the will. That clause in the will reads as follows:

"If any beneficiary hereunder shall contest the probate or validity of this will or any provision thereof, or shall institute or join in (except as a party defendant) any proceeding to contest the validity of this Will or to prevent any provision thereof from being carried out in accordance with its terms (regardless of whether or not such proceedings are instituted in good faith and with probable cause), then all benefits provided for such beneficiary are revoked and such benefits shall pass to the residuary beneficiaries of this Will (other than such beneficiary) in the proportion that the share of each such residuary beneficiary bears to the aggregate of the effective shares of the residuary. If all of the residuary beneficiaries join in such contest or proceedings, then such benefits shall pass to those persons (other than the persons joining in such contest) who are living at my death and who would have been my distributees had I died intestate a resident of the State of Texas and had the person or persons contesting my Will died immediately before me. Each benefit conferred herein is made on the condition precedent that the beneficiary shall accept and agree to all of the provisions of this Will and provisions of this article are an essential part of each and every benefit."

As applied to wills, the term, *in terrorem,* refers to a legacy given upon condi-

tion that the beneficiary shall not dispute the validity or disposition of the will. Black's Law Dictionary (4th Ed). It is said that *in terrorem* clauses are given a strict construction to avoid forfeiture. See 5 Bowe-Parker: Page On Wills § 44.29.

■ By its terms the *in terrorem* clause in the will of Constance Dulak was applicable only to suits by beneficiaries to contest the probate or validity of the will, or to prevent any provision of the will from being carried out.

An examination of appellees' pleadings demonstrates that their suit was not one to contest the probate or validity of their father's will, or one "to prevent any provision of the will being carried out." Far from attacking the validity of their father's will, appellees affirm the will, and by their suit, seek to recover damages for the value of property they claim by virtue of that will.

■ Appellant's second point is that the court erred in entering judgment when appellant's wife, Helen Dulak, was not made a party. The judgment set aside a release of a note and reestablished an indebtedness on a farm owned by appellant and his wife as community property. Appellant insists that his wife was an indispensable party.

■ Vernon's Tex.Rev.Civ.Stat.Ann. art. 1986 provides in part, ". . . a principal obligor in a contract, may be sued either alone or jointly with any other party who may be liable therein . . ." This provision is applicable where a husband and wife are joint obligors on a note. Swinford v. Allied Finance Company of Casa View, 424 S.W.2d 298 (Tex.Civ.App.1968, writ dism'd, cert. den., 393 U.S. 923 89 S. Ct. 253, 21 L.Ed.2d 259).

It has long been held that with respect to community property, the wife will be bound by a judgment against her husband, whether he was plaintiff or defendant, though she was not a party in name to the suit. This rule is based upon the doctrine

of virtual representation in that the husband is by law made the representative of her interests. Hall v. Aloco Oil Co., 164 S.W.2d 861 (Tex.Civ.App., writ ref'd).

Appellant urges that Tex. Family Code Ann., Sections 4.04 and 5.22(c), V.T.C.A., have in effect abrogated the doctrine of virtual representation as announced in Hall, *supra.*

Sec. 4.04 provides:

"(a) A spouse may sue and be sued without the joinder of the other spouse.

(b) When claims or liabilities are joint and several, the spouses may be joined under the rules relating to joinder of parties generally."

Sec. 5.22(c) provides:

"(c) Except as provided in Subsection (a) of this section, the community property is subject to the joint management, control, and disposition of the husband and wife, unless the spouses provide otherwise by power of attorney or other agreement in writing."

■ It would appear from an examination of the quoted sections that the husband and the wife are each the representative of the other with respect to the community. A judgment against the wife concerning the community would be binding upon the husband though he was not made a party. Likewise, as before, a judgment against the husband concerning the community would bind the wife though she was not a party.

In his third point of error appellant insists that the district court was without jurisdiction to determine appellees' suit for the reason, he says, that original jurisdiction of matters in probate is in the county court.

■ District courts have jurisdiction of suits filed against independent executors

for the recovery of property alleged to belong to estates and withheld from the assets of the estates under the claim that it belonged to them. Griggs v. Brewster, 122 Tex. 588, 62 S.W.2d 980 (1933), Stanley v. Henderson, 139 Tex. 160, 162 S.W.2d 95 (1942).

■ The probate of the will of Constance Dulak established the right of appellees to eight-ninths of the estate. Appellees' suit in district court was one of conversion for damages for property alleged to belong to them as legatees under the will of Constance Dulak, but which appellant wrongfully claimed as his own. The district court properly entertained the suit.

Appellant's fourth point of error urges that the court erred in entering judgment for exemplary damages.

In answering special issues the jury found that appellant exercised undue influence upon his father, that such was done with malice, and that the sum of $4,644.00 should be assessed against appellant as exemplary damages because of the exercise of the undue influence.

■ In support of his fourth point, appellant says that in the absence of a recovery of compensatory damages, there may be no award of exemplary damages.[3] Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397 (1934). We are not in disagreement with appellant's statement of the law, but are of the opinion that inasmuch as appellees received compensatory damages, as represented by their interest in the estate, that an award of exemplary damages was permissible.

Appellant says also, with respect to his point concerning exemplary damages, that there was no finding that he committed a wrongful act against *appellees*.

■ The jury was instructed the term malice meant ". . . ill will, bad or evil

notice, or such gross indifference *to the rights of others* as will amount to a willful or wanton act." (emphasis added) The definition of malice given in the charge was sufficiently broad to include appellees.

The evidence supporting the answers of the jury that in exercising undue influence upon Constance, appellant acted with malice, will not here be summarized. Some of that evidence appears in that part of this opinion dealing with undue influence. We have reviewed the statement of facts and find that those answers are supported by evidence.

Appellant's points of error five, six, and seven present questions concerning the admissibility of hospital records, and stem from objections to several written interrogatories which he claimed were leading and assumed facts not of record. The interrogatories complained of were directed to the records librarian of the several hospitals where Constance Dulak had been treated.

Some of the interrogatories to which appellant objected follow:

"2. Are you a Medical Records Librarian at Shoal Creek Hospital, Austin, Texas?"

. . . . . .

"4. Do you have in the medical library of Shoal Creek Hospital medical records of Constance Dulak who was admitted to your institution on or about March 28, 1971?"

. . . . . .

"6. How are these records handled at the hospital from the time of examination, consultation, observation or tests through the time they are filed in the hospital medical records library?"

. . . . . .

"9. Were the hospital records of Constance Dulak so dictated and transcribed or recorded?"

3. See Southern Methodist University: Collier, Recovery of Exemplary Damages In — The Absence of A Recovery of Compensatory Damages, 5 S.W.L.J. 468, (1951).

■ Written interrogatories have been commonly used in the trial practice to obtain hospital records for discovery purposes, and upon trial, have been employed to obviate the necessity for the records librarian being present.

■ Some of the interrogatories complained of were perhaps suggestive of the answers, but as those were mostly preliminary and introductory in nature, it made little difference if they were leading. See I McCormick and Ray, Texas Law of Evidence § 576(2). Moreover, the allowance of leading questions is a matter resting largely within the discretion of the trial court, I McCormick and Ray, Texas Law of Evidence § 579, and we are convinced that there was no abuse of discretion.

■ Appellant also complained of several interrogatories on the basis that those interrogatories assumed the fact that Constance was admitted to the hospital on a certain date and that he was examined. Viewing the record as a whole there is no doubt but that Constance was admitted to the respective hospitals on the dates indicated, and that he underwent examinations. If the court committed error in this respect, we are certain that the error did not amount to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex.R.Civ.P. 434.

■ Appellant asserts that the hospital records were erroneously admitted for the reason that they were not "properly proved up" by affirmatively showing that the entries were made by a person having *personal* knowledge of the event recorded. The answers of the records librarians in response to interrogatory six inquiring how the records of the patient "were handled" at the hospital, were that the medical records "were compiled by the attending physician and paramedical personnel", or that the "notations are made by the doctors or nurses concerned with the case . . . ." These answers satisfy the requirement of Tex.Rev.Civ.Stat.Ann. art 3737e, § 1(b), as to personal knowledge of the entrant.

Appellant's last complaint involving the hospital records concerns the failure of the court to exclude such entries in the nurses' notes that Constance Dulak was "still confused", "very confused", "disoriented", and "WILD". The trial court also admitted, over appellant's objection, the medical diagnosis of Constance, "Organic Heart Disease, Arteriosclerotic, Artrial Degenerative Joint Disease, Multiple Joint Involvement."

■ Art. 3737e, § 1 provides that a record of an act, event, or rendition shall be competent evidence of the occurrence of the act or event or "the existence of the condition" when the statutory conditions to admissibility are otherwise present. This provision is a statutory exception to the hearsay rule, and permits the admission of evidence of medical diagnoses and information in hospital records if the diagnoses or information records "a condition resting in reasonable medical certainty." See Loper v. Andrews, 404 S.W.2d 300 (Tex. 1966). This requirement stems from the need to cross-examine the persons making the entries when their opinions are "expert conjectures", ones not resting on demonstrable medical facts and about which there could be genuine dispute. See Otis Elevator v. Wood, 436 S.W.2d 324 (Tex.1968).

■ Appellant claims that the terms in the nurses' notes with the exception of the word, "WILD," were not statements of facts but rather were medical terms with uncertain meanings. We are unable to agree, and believe that the entries in the nurses' notes were routine observations made by paramedical personnel which recorded Constance Dulak's general demeanor and condition at specific times. Constance's condition, as reflected by the nurses' notes, was apparent and observable by persons generally. See Loper v. Andrews, *supra.*

■ The medical diagnosis, appearing in the hospital records, was admissible under the authority of Loper v. Andrews, *supra*, as the medical condition reflected by the diagnosis was well recognized and reasonably certain.

Several appellees were permitted to testify as to conversations with Constance Dulak before and after he was in one of the hospitals. They also testified as to his physical appearance, demeanor, and manner of speech, during the days of his hospitalization. Appellant complains of the admission of this class of testimony as being in violation of Tex.Rev.Civ.Stat. Ann. art. 3716, commonly called the Dead Man's Statute. More specifically, appellant claims that the Dead Man's Statute barred appellees' testimony since appellant, in his capacity as executor of the estate, was a party to the suit, and in that capacity he sought certain relief.

■ We are guided in the consideration of this point by the principle that the Dead Man's Statute is to be strictly construed.[4] Ragsdale v. Ragsdale, 142 Tex. 476, 179 S. W.2d 291 (1944), Pugh v. Turner, 145 Tex. 292, 197 S.W.2d 822 (1946).

■ Appellees did not sue appellant in his capacity as executor of the estate of Constance Dulak, and they sought no relief against the estate. Until June 13, 1972, six days before trial, the suit was purely one between legatees under a will, a class of controversy not contemplated by the Statute. Newton v. Newton, 77 Tex. 508, 14 S.W. 157 (1890). At that time appellant in his capacity as executor, over the protest of appellees, was permitted to intervene in the suit. An examination of the judgment shows that certain credits were allowed appellant personally, but that no relief was afforded for or against the estate or appellant as executor. Under these circumstances, and heeding the rule of strict construction, we conclude that appellees' suit was not one by or against the executor and that the Dead Man's Statute was inapplicable.

By four points appellant complains of the answer of the jury to special issue one to the effect that Constance signed the joint account signature card for the limited purpose of convenience. Appellant maintains that the jury's answer is supported by no evidence or, alternatively, by insufficient evidence. We are unable to agree and are of the opinion that there was evidence to support the jury's answer, and that such answer was not against the greater weight and preponderance of the evidence.

■ Lillie Dulak, wife of appellee Ernest Dulak, testified that Constance had in 1969 asked her if she would sign a card at a Waco bank so that in case he became incapacitated by illness, she could pay his medical bills and expenses by drafts on his bank account. Lillie agreed and signed the card, but because the need never arose, she did not draft on his account. Appellant did not object to the admission of Lillie's testimony, but in his brief he says that it is hearsay and cannot be considered by this Court. Appellant's position is not well taken since evidence of spoken expressions when offered, not to prove the facts stated therein, but to show, as an inference therefrom, the state of mind of the person by whom they are communicated is not violative of the hearsay rule. I McCormick and Ray, Texas Law of Evidence § 797.

The prior convenience account at the Waco bank with Lillie Dulak is some indication that Constance intended a similar arrangement with appellant. Other evi-

4. The reason usually offered in support of the Dead Man's Statute is that to permit the survivor to testify would place in peril the estates of the dead. The remedy afforded by the Statute is to seal the mouths of all surviving parties who are interested in behalf of the estate or against it. It has been said this is too drastic a remedy, and one that does more harm than good. I McCormick and Ray, Texas Law of Evidence, § 337.

dence which the jury could have considered in this connection is the fact that the joint account card with appellant was signed by Constance shortly before entering the hospital where he was scheduled for surgery. At that time he was also deaf and almost blind.

There was evidence that Constance was parsimonious. He had no history of giving his children sizable gifts. Another pertinent circumstance was that by his will Constance had divided his estate equally among his children. Other evidence was that appellant had mentioned to a bank official that his father was going to lend him some money. This evidence argues against an intention of gift by Constance to appellant.

■ Contrary to another of appellant's points concerning the joint account, the fact that Constance signed the joint account card is not, as a matter of law, conclusive of a gift to appellant. The signing of the account card is but one element to be considered by the trier of fact in ascertaining whether or not Constance Dulak intended a gift to appellant. See Ottjes v. Littlejohn, 285 S.W.2d 243 (Tex.Civ.App. 1955, writ ref'd, n.r.e.).

■ Appellant also claims that the answers of the jury to special issue one and two were in irreconcilable conflict. We find no conflict. By answer to special issue number two the jury failed to find that Constance did not have sufficient mental capacity to understand the nature of and the consequences of signing the joint account card.

The appellees pleaded and obtained the submission of special issues upon several independent theories of recovery. Among these were that (1) the joint account with appellant was one of convenience, or (2) Constance did not have the requisite mental capacity to understand the nature and consequence of opening that account, or (3) Constance, when he signed the joint account card, was acting under the undue influence of appellant. A favorable answer by the jury to the issues submitting any one of these theories would entitle appellees to a judgment for the proceeds in the account. The jury rejected appellees' proof with respect to mental capacity and undue influence, but was convinced with respect to the account being one of convenience.

Appellant says that there was no evidence, or alternatively insufficient evidence, to support the jury's answer that the $10,000.00 gift to appellant and the release of the note were obtained through the exercise of undue influence. Appellant also complains of the definition given by the court of undue influence.

■ The court defined "undue influence" in the charge to the jury as follows:

"The term 'undue influence,' as used herein, means such influence or domination which, under the facts and circumstances existing, destroys the free agency of one person, and substitutes in the place thereof, the will of another."

In Long v. Long, 133 Tex. 96, 125 S.W. 2d 1034 (1939) the Court defined "undue influence," as ". . . such influence or dominion as exercised at the time, under the facts and circumstances of the case, which destroys the free agency of the testator, and substitutes in the place thereof the will of another."

A comparison reveals that the trial court in the instant case gave substantially the same definition as approved in Long v. Long, *supra*.

■ Preliminary to an examination of the record for evidence of undue influence it should be remembered that such conduct may be established by circumstantial as well as direct evidence. This is so since undue influence is usually a subtle matter and by its nature involves an extended course of dealings and circumstances. Long v. Long, *supra*.

With respect to the alleged gift of $10,000.00, the record shows that it was

made by a check dated by appellant as March 1, 1971, that the sum of $10,000.00 was written in by appellant, and that the payee, appellant, was written in by appellant. On one corner of the check appeared in appellant's handwriting the notation, "gift 2/10/71." On that date Constance was in the hospital undergoing a cataract operation.

Appellant's testimony was contradictory as to the time the check was obtained. Among other times, appellant claimed that it was obtained on February 9, 1971, between leaving the bank after opening the account and the arrival at the hospital. Under these circumstances the jury could well have believed that the check was obtained during one of the hospitalizations of Constance.

There is sufficient evidence supporting the jury's answer of undue influence exercised by appellant to obtain the release of the note given for the farm. That release was obtained on February 25, 1971, after Constance had fallen in appellant's trailer house and had broken his hip. Appellant described the fall as follows:

> "Well, Dad lay there on the floor and he said . . . he kind of hollered when he hit the floor, and something you could hear like if you broke a pencil or something, and I immediately dropped the phone and went to his side, and he hollered loud when he hit the floor."

Appellant described the sound of his father's fall as ". . . . there was a crunching kind of sound." Constance fell about noon and lay on the floor for about an hour or two. He signed the release "a good while after his fall." Appellant took his father to the hospital at about 9:00 o'clock P. M.

Appellees' counsel referring to the release asked appellant:

> "It says, 'I, Constance Dulak, agree . . .' that kind of sounds like you were trying to get him to agree to it?"

Appellant's reply was, "Maybe it does. As I say, that's his wording."

Point of error nineteen complains of the refusal of the court to allow appellant's trial amendment asserting that in January, 1971, Constance Dulak gave appellant and his wife the promissory note relating to their purchase of the farm, and that Constance said that at a later time they could go to the lawyer's offices to get the "proper papers" prepared. Points of error twenty through twenty-two complain of the failure of the court to submit special issues pursuant to the tendered trial amendment.

The matter of granting or refusing leave to file a trial amendment, pursuant to Tex.R.Civ.P. 66, is addressed to the sound discretion of the trial court, and the court's order will not be set aside in the absence of a clear showing that the court abused its discretion. Vermillion v. Haynes, 147 Tex. 359, 215 S.W.2d 605 (1948).

Under Rule 66, the burden of convincing the trial court that the allowance of the amendment will prejudice the maintenance of his action or defense rests on the party resisting the filing of the amendment. However, the burden of demonstrating that the trial court erred in refusing to permit the amendment rests on the party contending that the refusal was not justified by the rules. The mere fact that the court refused to permit the amendment is not enough. Herrin Transportation Co., Inc., v. Parker, 425 S.W.2d 876 (Tex.Civ. App.1968, writ ref. n.r.e.), Kiebach v. Luker, 476 S.W.2d 46 (Tex.Civ.App.1972, no writ). We are not persuaded that the court abused its discretion in refusing to allow the trial amendment.

Appellant's final point is that the errors of the court taken together, constituted harmful error and resulted in the entry of an erroneous judgment. This point is not meritorious.

The judgment is affirmed.

Affirmed.