**Joe DULAK, Petitioner,**

v.

**Frank DULAK et al., Respondents.**

**No. B–4137.**

Supreme Court of Texas.

June 19, 1974.

On Rehearing July 25, 1974.

Rehearing Denied Sept. 24, 1974.

Kuykendall & Kuykendall, Kirk Kuykendall, Austin, for petitioner.

Mitchell, Yeakel, Orr & Trickey, Arthur Mitchell, Lou McCreary, Austin, Joe N. Johnson, Waco, for respondents.

POPE, Justice.

Frank Dulak, joined by seven of his brothers and sisters, instituted this suit against their brother, Joe Dulak. Plaintiffs and defendant are the children and devisees in equal shares of the estate of their father, Constance Dulak. Plaintiffs alleged that Joe converted certain funds belonging to their father shortly before he died, and also that Joe, by the use of undue influence, procured from their father a release of a promissory note which he had given his father for the purchase of a farm. Plaintiffs prayed for recovery of their eight-ninths of the funds they allege that Joe converted, and for the cancellation of the release that Joe obtained from Constance. Plaintiffs also asked for recovery of the unpaid balance of the note and for foreclosure of the deed of trust. The trial court rendered judgment against Joe Dulak on a jury verdict for the sum of $20,358.39 actual damages, which total it reached by awarding plaintiffs eight-ninths of all funds which Joe Dulak had originally deposited into a joint checking account with Constance Dulak. Joe, however, was credited with his one-ninth share and certain expenses which he had incurred for the estate of Constance Dulak. The trial court also rendered judgment against Joe for $4,644.00 exemplary damages and cancelled the release. The court of civil appeals affirmed the judgment. 496 S.W.2d 776.

### Was Defendant Joe Dulak's Wife An Indispensable Party?

Plaintiffs did not join Joe Dulak's wife, Helen, as a defendant, and Joe Dulak on appeal says that the judgment is void for absence of an indispensable party. Constance Dulak conveyed his farm to Joe and Helen on April 13, 1966. Joe and Helen at that time signed the purchase money note payable to Constance, as well as a deed of trust. The release which Constance later signed on February 25, 1971, recited that Joe "has paid me all he and his wife and

heirs owe's (sic) me . . . ." These facts disclose Helen's joint community interest in the property and the debt secured by the property.

■ The plaintiffs contend that Helen, though not named as party in the action against her husband, is still bound by the judgment under the doctrine of virtual representation of spouses. In Griffin Cooper v. Texas Gulf Industries, Inc., 513 S.W.2d 200 (Tex.1974), decided today, this court has ruled that the Family Code has abolished the doctrine of virtual representation whereby the husband could act for and represent the wife in an action concerning their joint community property. Section 5.22 of the Family Code terminated that practice, and in the case of joint management community property, the wife is now a joint manager. She is as individual as is her husband. Her rights, like his, may be affected only in an action which calls her to answer the same as any other joint owning individual.

The Legislature expressed its intent concerning this question as clearly as possible by requiring a written authorization by one spouse of the other if they intend to alter the new rule.[1] In our present case, Helen Dulak did not authorize her husband by power of attorney or other agreement in writing to represent her in the management, control, and disposition of her joint community property. Only where such a written agreement exists would the spouses be deemed representatives of each other with respect to the community.

In *Cooper, supra,* we made the further ruling that the omission of one of the spouses as a party in an action concerning their joint community property no longer renders a judgment void. Since jurisdiction with respect to the non-joinder of parties is now de-emphasized by force of amended Rule 39, we conclude that failure to join Helen Dulak in the suit below was not a jurisdictional defect and the judgment, unless otherwise erroneous, is binding upon those who were parties to the suit.

### On the Merits

Constance Dulak, the father of the nine children who are parties to this action, was divorced in 1939, and after that time he lived alone on a farm near Waco. Joe was the only one of his children who maintained any kind of a regular contact with Constance. In early January, 1971, Constance wrote and asked Joe to move him from the farm, because he could no longer care for himself. Constance was eighty-five years old, deaf, and suffered from cataracts. On January 10, 1971, Constance moved from Waco to Austin to live with Joe, his wife and two children in their mobile home.

Joe and Constance returned to Waco on January 12 so that Constance could close out his checking account and his safety deposit box in the First National Bank of

---

1. § 5.22. *Community Property: General Rules*
   (a) During marriage, each spouse has the sole management, control, and disposition of the community property that he or she would have owned if single, including but not limited to:
   (1) personal earnings;
   (2) revenue from separate property;
   (3) recoveries for personal injuries; and
   (4) the increase and mutations of, and the revenue from, all property subject to his or her sole management, control, and disposition.
   (b) If community property subject to sole management, control, and disposition of one spouse is mixed or combined with community property subject to the sole management, control, and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses, unless the spouses provide otherwise by power of attorney or other agreement *in writing*.
   (c) Except as provided in Subsection (a) of this section, the community property is subject to the joint management, control, and disposition of the husband and wife, unless the spouses provide otherwise by power of attorney or other agreement *in writing*. (Emphasis added.)

Waco. On February 9, 1971, Joe went with Constance to the Texas State Bank in Austin where Constance opened a joint checking account with Joe. It was a joint tenancy account with right of survivorship. Constance deposited $5,000 in the account and also left some certificates of deposit with the bank with instructions to collect the funds for deposit to the new account. On February 17 the bank received the money from the certificates and deposited it to the account, which then contained more than $28,000.

On the afternoon of February 9, 1971, Joe took his father to Seton Hospital in Austin for a cataract operation the next day. On February 15, Constance returned to Joe's mobile home, and on February 25, Constance fell in the living room of the mobile home and broke his hip. That night he was admitted to the hospital and had a hip operation the next day. He returned to Joe's home on March 19. Constance was readmitted to the hospital on March 28 and on April 14, he died.

After Constance established the joint account, he signed a check payable to Joe in the amount of $10,000. Joe cashed the check on March 1, 1971. On that same day Joe withdrew $14,000 and obtained fourteen one-thousand-dollar savings certificates which were issued jointly to himself and his father with rights of survivorship.

The jury sustained plaintiffs' claims to this entire joint account by finding that Constance signed the joint account signature card for the limited purpose of providing a convenient method for the payment of his expenses while he was hospitalized or incapacitated. The jury also found that Constance acted under the undue influence of Joe Dulak when he signed the $10,000 check. The trial court accordingly rendered judgment against Joe for the full amount of the funds which Constance deposited to the joint account less Joe's equal one-ninth part of the account and certain checks for medical expenses.

Joe's attack upon this part of the judgment is that there is no evidence which supports either of those findings.

■ There is some evidence in the record from which the jury could infer that the joint account was a "convenience" account, that is, that Constance did not surrender his exclusive right to the funds. Krueger v. Williams, 163 Tex. 545, 359 S. W.2d 48 (1962). Constance knew about convenience joint accounts because he had established a joint account on a prior occasion immediately before his entry into a hospital. One of the bank officers testified that he helped Constance and Joe when they came to open the account on February 9, 1971. On that occasion, Joe said that he planned to borrow $10,000 from his father, and he obtained from the bank officer a blank note which he planned to use in the transaction. Joe knew that his father possessed no funds other than those that he had put into the joint account, and the inference is that Joe, at the time the account was opened, regarded the account as his father's account. There was some evidence which supports the jury finding that the account was a convenience account.

■ We find no evidence, however, which supports the finding that Joe exerted undue influence upon Constance in signing the check for $10,000. There is no testimony that Joe in any way overreached his father in connection with the check. There is some evidence that Constance signed the check on February 9, prior to his entering Seton Hospital at about two o'clock in the afternoon for eye surgery, and that Joe held the check until March 1. The check was dated in one corner "2/10/71." There is evidence of ample opportunity for Joe's exercise of undue influence just as there is also ample evidence of a close relationship between Joe and his father which did not exist with the other children. It was Joe to whom the father repeatedly turned for help throughout the trying last days of his life. He named Joe

his executor about six months earlier. There is no proof of undue influence in connection with the check. '

The jury also found that Constance signed the release dated February 25, 1971, when he was under the undue influence of Joe Dulak. By reason of that finding, the trial court set aside the release of the promissory note on which there was a principal balance of $15,810 and declared that the plaintiffs may request the trustee to conduct a trustee's sale if Joe Dulak fails to make current the delinquent installments on the note within sixty days after final judgment. We find no evidence of undue influence in connection with the release.

■ After Constance had his eye operation and was discharged from the hospital on February 15, 1971, he returned to his new home with Joe and his family. On February 25, after lunch while Joe was talking on the telephone, Constance lost his balance and fell in the living room of the mobile home. The evidence is that Joe dropped the phone and went to his aid. Constance told him to let him stay on the floor, because the same thing had happened to him before. His leg did not hurt except when he tried to put weight on it, but he was unable to stand up. Joe and his wife put him on a hide-a-bed. Joe testified he called one physician who put him in touch with a Dr. Greenway, who did not return Joe's call until late. About nine o'clock in the evening an ambulance took Constance back to the hospital, and on March 1 he had surgery.

During the afternoon wait, according to the evidence, Constance told Joe to bring him a pencil and a paper, which he did, but Constance had difficulty writing. Constance then asked Joe to take down what he said, and finally he asked Helen to type out the release, which she did.

The most that the evidence in this record shows is that Joe had the opportunity to exert undue influence upon his father. In

Rothermel v. Duncan, 369 S.W.2d 917, 922, 923 (Tex.1963), we announced the principles which also control this case:

. . . Thus, before a testament may be set aside on the grounds of undue influence the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence. See: Stewart v. Miller, Tex.Civ.App. (1925), 271 S.W. 311, wr. refused; Olds v. Traylor, Tex.Civ.App. (1944), 180 S.W. 2d 511, wr. refused.

\* \* \* \* \* \*

. . . It is the law in Texas that a will cannot be set aside on proof of facts which at the most do no more than show an opportunity to exercise influence. Burgess v. Sylvester, Tex.Civ.App. (1944), 177 S.W.2d 271; affirmed, 143 Tex. 25, 182 S.W.2d 358. The establishment of the circumstances of having an opportunity to exert such influence due to being in a position of caring for the person upon whom the influence is supposed to be exerted is equally consistent with the theory of innocence as it is with the theory of wrongdoing. Price v. Taliaferro, Tex.Civ.App. (1952), 254 S. W.2d 157, wr. ref. n.r.e.

Plaintiffs argue that an inference could be drawn that Constance was kept helpless on the floor of the mobile home until he gave his release to Joe and Helen. There is nothing in this entire record which shows that Joe on that or any other occasion mistreated his father or that his father so believed. Constance made Joe his executor, sold him the farm on easy terms some years earlier, called on Joe when in trouble, lived with his family, relied on Joe to get his eyes and ears checked, and through the years harmony existed between him and Joe's family. The silence of the

record does not generate the fact of Joe's undue influence upon Constance. Since there was no undue influence, the judgment for punitive damages by reason of undue influence is also in error.

Plaintiffs are not entitled to judgment for the $10,000 which Joe received by check from Constance, and they are not entitled to judgment canceling and rescinding the release which Constance executed on February 25, 1971; nor are they entitled to a judgment for exemplary damages in the sum of $4,644. For those errors the judgments of the courts below are reversed and the cause is remanded to the trial court for an entry of judgment not inconsistent with this opinion.

## ON REHEARING

 Plaintiffs urge in their motion for rehearing that they should have judgment for the $10,000 which Joe received by the check dated February 10, 1971, from Constance. Plaintiffs say that the jury found as a fact, not only that Joe exercised undue influence upon his father, but also the jury refused to find that Constance intended to make a gift of $10,000 to Joe when he delivered the check to him. We adhere to our holding that Joe did not exercise undue influence upon his father. While there are legal relationships other than that of a gift which could arise out of the delivery of the check to Joe, our re-examination of the record in this cause convinces us that Joe's claim to the funds from that check was grounded upon gift. According to Joe, the reason that he wrote the word "gift" on the lower left-hand corner of the check was that his father told him to do so. We must give force to the jury finding which defeats Joe's only claim of right to the funds.

We grant plaintiffs' motion for rehearing in part, we set aside our former judgment, and we affirm that part of the judgments of the courts below which awarded actual damages to plaintiffs in the sum of $20,358.39 together with interest, which sum

is eight-ninths of the funds on deposit in the joint account after deducting certain expenses and Joe's share of the funds. We reverse that part of the judgments below which awarded exemplary damages to plaintiffs and ordered the cancellation and rescission of the release which Constance Dulak executed on February 25, 1971, and on those matters we render judgment that the plaintiffs take nothing.

The judgments of the courts below are affirmed in part and reversed and rendered in part.