Herman **STIELER** et al., Appellants,

v.

Robert Real **STIELER** et al., Appellees.

No. 12341.

Court of Civil Appeals of Texas, Austin.

June 1, 1976.

Rehearing Denied June 23, 1976.

This is an appeal from a judgment canceling deeds which conveyed about five hundred twenty-seven acres of land located in Blanco County. Appellants are Herman and Emil Stieler, and appellees are Robert Real Stieler, Clarence Victor Stieler, and Gussie Stieler Mitchell. Appellants and appellees are brothers and sister, and all are children of the grantor, Gus Stieler, deceased.

Appellees filed suit in the district court of Blanco County to cancel the deeds executed by their father conveying the acreage to their brothers. The jury answered that Gus Stieler did possess mental capacity at the time that he signed the deeds, but that at the time that he signed the deeds, Gus Stieler was acting under undue influence, exercised by appellants, their wives, or children.

At the outset, we are confronted with appellees' motion to dismiss the appeal for want of jurisdiction for the stated reason that appellants did not show good cause why the transcript and the statement of facts could not have been filed within the time prescribed by the Rules of Civil Procedure. We are of the opinion that appellees' motion is not well taken, and, accordingly, we will overrule the motion.

The judgment was signed on September 20, 1974. The motion for new trial was filed on September 26, 1974, and was overruled by operation of law on November 10, 1974. Appellants timely requested the preparation of the transcript and statement of facts.

This Court granted appellants' first motion for extension of time for filing the statement of facts and transcript. The time for filing the record was extended to March 4, 1975. The basis for the motion for extension of time was that the court reporter was unable to prepare the statement of facts within the prescribed time because of the press of official business.

Before March 4, this Court granted appellants' second motion for extension of time for filing the statement of facts and tran-

Broadus A. Spivey, Gibbins & Spivey Associated, Inc., Austin, for appellants.

Daniel F. Derrick, W. R. Savage, Jim M. Cross, Derrick & Savage Law Offices, Marble Falls, for appellees.

## ON MOTION FOR REHEARING

SHANNON, Justice.

The opinion of this Court filed on March 17, 1976, is withdrawn, and the following opinion replaces it.

script. The time for filing the record was extended to *May 5, 1975.* The basis for the second motion for extension of time was that the official court reporter died on December 17, 1974. At the time of death, the court reporter had not completed the transcription of his shorthand notes of the testimony. Thereafter the district court spent considerable time and effort searching for a reporter who could interpret and transcribe the shorthand notes.

On April 10, 1975, appellants' counsel wrote the district clerk of Blanco County requesting the clerk to begin the preparation of the transcript. In his letter to the clerk, counsel wrote, "The Transcript and Statement of Facts is [*sic*] due to be filed in the Court of Civil Appeals on [*sic*] the above case on *May 7, 1975.*"

On May 6, one day after the date when the record was to have been filed with the Clerk of this Court, appellants filed their third motion to extend time for filing the statement of facts and transcript.

As grounds in support of their third motion for extension of time appellants alleged that (1) the completed statement of facts contained numerous errors and that it required "extensive time" on the part of the three attorneys for appellants to reconcile the errors, and (2) that one of appellants' attorneys who participated in the trial underwent emergency surgery on April 21, 1975, and was not in a condition to complete an examination of the statement of facts until May 6, 1975.

In appellees' sworn response in opposition to the third motion for extension, it was shown that the substitute court reporter obtained by the district court to complete the statement of facts had sent the statement of facts to appellants' counsel in Austin by bus. The statement of facts arrived in Austin on March 26, 1975.

As is apparent, appellants' third motion for extension of time was filed in 1975 and the cause was submitted and argued in 1975.

Appellees argue that our consideration of appellees' motion to dismiss is governed by Tex.R.Civ.P. 386 prior to its amendment.[1] That rule formerly provided that by timely motion filed with the Clerk of the Court of Civil Appeals "good cause" may be shown why the statement of facts could not have been filed within the prescribed time.

Appellees point out that appellants' counsel had possession of the statement of facts as of March 26, 1975. Appellants' counsel had thirty-eight days before May 5, to review the statement of facts, to ascertain the errors therein, and to correct those errors. Appellees direct our attention to the fact that three attorneys for appellants participated in the trial of the case, and though one of their number became incapacitated by surgery twenty-eight days after the receipt of the statement of facts, the other two attorneys could have completed review of the statement of facts and could have corrected the errors.

Under former Rule 386, the appeal would be dismissed. The statement of facts was in the possession of appellants' counsel long before the time for filing, and it should have been filed on or before May 5, 1975. *Matlock v. Matlock,* 151 Tex. 308, 249 S.W.2d 587 (Tex.1952), *Pollard v. American Hospital and Life Insurance Company,* 472 S.W.2d 116 (Tex.1971).

With respect to the application of Rule 21c to their motion to extend time, appellants remind us, for the first time on motion for rehearing, of Tex.R.Civ.P. 814. Rule 814 provides in part as follows:

"These rules shall take effect on September 1st, 1941. They shall govern all proceedings in actions brought after they take effect, and also all further proceedings in actions then pending, except to the extent that in the opinion of the court

---

1. Rule 386 was amended effective January 1, 1976. The amendment repeals that part of the rule which permitted extensions of time on motion filed within fifteen days after expiration of the sixty-day period when the motion showed good cause why the record could not be filed timely. Texas R.Civ.P. 21c now governs the consideration of motions for extensions of time.

their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure shall apply."

Though Rule 814 refers to the effective date of the original Rules of Civil Procedure, that rule has been applied to subsequent amendments to the Rules. *Commercial Insurance Co. of Newark, N. J. v. Lane,* 480 S.W.2d 781 (Tex.Civ.App.1972, writ ref'd n. r. e.), *Arana v. Gallegos,* 279 S.W.2d 491 (Tex.Civ.App.1955, no writ). Appellants' argument is well taken, and we agree that by virtue of Rule 814, Rule 21c governs our considerations of appellants' effort to perfect their appeal.

Rule 21c provides as follows:

"The failure of a party to timely file a transcript, statement of facts, motion of rehearing in the court of civil appeals or application for writ of error, will not authorize a dismissal or loss of the appeal if the defaulting party files a motion *reasonably explaining such failure* in the court whose jurisdiction to make the next ruling in the case would be affected by such failure. Said motion must be filed within fifteen (15) days of the last date for timely filing provided in the applicable rule or rules sought to be avoided, although it may be acted upon by the court at a date thereafter." (Emphasis added)

Rule 21c requires of the movant a reasonable explanation for his failure to file the record within the time prescribed. In our view, "reasonable explanation" permits a showing that such failure to file timely was not deliberate or intentional, but rather was the result of inadvertence, mistake, or mischance. See dissenting opinion of Justice Clarence Guittard in *Sloan v. Passman,* Tex.Civ.App., 536 S.W.2d 575, Dallas, March 11, 1976 (not yet reported). Under the facts, set out above, we are of the opinion that appellants reasonably explained their failure to file the record within the required time.

Appellants attack the judgment of the district court by two points of error, the first being that there was no evidence to support the jury's answer that appellants exercised undue influence over Gus Stieler. Their second point of error is that the jury's answer that appellants exercised undue influence over Gus Stieler was contrary to the great weight and preponderance of the evidence.

A summary of the facts follows. In 1916, Gus and Meta Stieler were married. They had six children: Herman, Emil, Robert, Gussie, Alton, and Clarence. In 1933, Gus and Meta Stieler bought a 1,010-acre ranch in Blanco County near Cypress Mill. A portion of that ranch is the subject of this appeal.

Mrs. Stieler died intestate in 1962. The six children inherited, in equal portions, their mother's one-half of the ranch. Differences in the family arose concerning whether or not the children's one-half of the ranch should be partitioned. Herman and Emil, appellants, lived away from the ranch and wished to partition their shares. The other children did not want the ranch to be partitioned. At that time, so appellees say, Mr. Stieler did not favor a partition. The difference in attitudes toward the partitioning of the ranch resulted in severe family disagreements. After Alton died in 1967, Herman and Emil caused their shares to be partitioned.

Mr. Stieler lived on the ranch from 1933 to 1967. In 1967, while Alton was in the hospital, Mr. Stieler lived with Clarence and his family at Sherwood Shores. Clarence and his family then moved to the ranch where Mr. Stieler lived with them for about seven months. In early 1968, Clarence decided that his father had "got a little too much for us to take care of." Clarence, and his sister, Gussie, agreed to have their father move from the ranch and stay with Gussie in Oklahoma City.

In April, 1968, while in Oklahoma City, Mr. Stieler suffered a heart attack. He was treated by Dr. Hugh Stout who diagnosed the cause of the attack to be arteriosclerosis and hypertension. On the physician's recommendation, Gussie placed her

father in a nursing home. Though the evidence is conflicting, there was some testimony that Herman and Emil helped pay for Mr. Stieler's stay in the nursing home.

While Mr. Stieler was still in Oklahoma he leased the ranch for grazing purposes to Robert, Gussie, and Clarence.

In May of 1970, Mr. Stieler wrote Herman, "I would indeed enjoy if it isn't asking to [sic] much if you could get me because I haven't seen any of you all for some time." A few days later Herman and his wife drove to Oklahoma City, picked up Mr. Stieler, and toured the western states before returning to central Texas. Gussie testified that Herman promised to return their father to Oklahoma a short time after the trip and the visit in Texas.

When he returned to Texas, Mr. Stieler stayed with Herman's family in Austin. In early August, 1970, he wrote Robert and Clarence informing them that he was moving to the ranch with Herman's family and requesting them to move ". . . what you have there within a week." In the same correspondence the elder Stieler requested Robert and Clarence ". . . to take their mother's part [of the ranch] so my land will be clear."

Mr. Stieler and Herman with his family moved to the ranch in August, 1970. When they arrived they discovered that the locks to the house had been changed. They broke the locks and went into the house to spend the night. Clarence and his family arrived at the house about midnight. Clarence and Herman began a heated argument, and an ugly brawl ensued with Herman and his wife pitted against Clarence. According to Clarence's version of the facts, Herman knifed him during the course of the fight. Gus Stieler was in the room during the struggle, but he "just sat there with his head down."

Shortly after the fight, Mr. Stieler decided to partition his half of the ranch from that part owned by appellees. On the recommendation of a friend, who was also the brother-in-law of Herman's wife, he hired an Austin attorney, Jon N. Coffee. Mr. Stieler explained to Coffee that he wanted to do whatever was necessary to get his part of the ranch "fenced off," so that he could be "left alone" by his family.

The attorney prepared a petition for partition which Stieler signed. By that suit Stieler sought to have the court partition out his interest in the ranch. The partition was agreed upon in February of 1971, and judgment was entered later awarding Mr. Stieler 525 acres of the ranch.

During the spring and autumn of 1971, Mr. Stieler wrote Coffee that he continued to have troubles with appellees respecting their animals which remained on his part of the ranch. He also wrote of disputes concerning a fence to be built separating the parcels of land which had been partitioned.

In February of 1971, he wrote Coffee of his intention to deed his part of the ranch to Herman and Emil. He asked the attorney to prepare and to send him deeds to effectuate that result. After the execution of the deeds in June, 1972, Stieler expressed his satisfaction to Coffee with his having deeded the land to appellants.

After Coffee mailed the deeds to Stieler, Herman and his wife drove Stieler to Marble Falls where a justice of the peace witnessed the execution of the deeds on May 13, 1972. When asked by the justice of the peace if he wanted to sign the deeds, Mr. Stieler said that he did and that "These two kids have taken care of me."

Appellee Robert Stieler testified that after his father began living with Herman's family he had difficulty in visiting with his father alone. Clarence and Gussie were of the same view. Alton Kneese, a friend and neighbor of Gus Stieler, also testified that Herman's wife always seemed to be present during his visits with the elder Stieler and that she did not hesitate to interrupt Stieler and "take over" the conversation.

Mr. Stieler died on November 23, 1972.

■ In *Rothermel v. Duncan*, 369 S.W.2d 917, 922, 923 (Tex.1963), the Supreme Court

announced the principles which control the disposition of this case:

". . . Thus, before a testament may be set aside on the grounds of undue influence the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence. See: *Stewart v. Miller*, Tex.Civ.App. (1925), 271 S.W. 311, wr. refused; *Olds v. Traylor*, Tex.Civ. App. (1944), 180 S.W.2d 511, wr. refused.

.   .   .   .   .

". . . It is the law in Texas that a will cannot be set aside on proof of facts which at the most do no more than show an opportunity to exercise influence. *Burgess v. Sylvester*, Tex.Civ.App. (1944), 177 S.W.2d 271; affirmed, 143 Tex. 25, 182 S.W.2d 358. The establishment of the circumstances of having an opportunity to exert such influence due to being in a position of caring for the person upon whom the influence is supposed to be exerted is equally consistent with the theory of innocence as it is with the theory of wrongdoing. *Price v. Taliaferro*, Tex.Civ.App. (1952), 254 S.W.2d 157, wr. ref. n. r. e."

These principles were quoted and approval by the Supreme Court in *Dulak v. Dulak*, 513 S.W.2d 205 (Tex.1974) and referred to in *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257 (Tex.1974).

■ The principles quoted from *Rothermel* apply to the execution of deeds as well as to the execution of wills. *Self v. Thornton*, 343 S.W.2d 485 (Tex.Civ.App.1960, writ ref'd n. r. e.).

The facts in *Dulak, supra,* were stronger in support of the jury's finding of undue influence than the facts in support of the jury's finding in the instant case.

In *Dulak*, the Supreme Court reversed the judgments of the district court and of this Court upon the basis that there was no evidence to support the jury's finding of undue influence. In that case the father lived with his son, Joe. At noon, the father fell and broke his leg in Joe's trailer house. Joe and his wife, Helen, were present at the time of the fall. Though Joe telephoned a physician, the physician did not return his call for a long period of time and Joe did not take his father to the hospital until about nine o'clock in the evening. In the meantime, according to Joe and Helen, the father asked Helen to type a release of a promissory note given by them for the purchase of a farm from the father. He signed the release "a good while after his fall."

In reviewing those facts, this Court was of the opinion that there was sufficient evidence to support the jury's answer of undue influence exercised by Joe in obtaining the release of the note. On appeal, however, the Supreme Court held that, "The most that the evidence in this record shows is that Joe had an opportunity to exert undue influence upon his father."

■ Since the elder Stieler lived with Herman and his family before and at the time of the execution of the deeds, the opportunity to influence the disposition of his property might be inferred. We find no evidence, however, that appellants or their families did in fact exercise undue influence upon Gus Stieler. The mere opportunity to exercise undue influence will not support a jury finding of undue influence. *Rothermel v. Duncan, supra, Dulak v. Dulak, supra, Stephens County Museum, Inc. v. Swenson, supra.*

We grant appellants' no evidence point. The judgment of the district court is reversed and judgment is here rendered that appellees take nothing.

Reversed and Rendered on Motion for Rehearing.