Lola Faye HENDERSON et al., Appellants,

v.

Lucy SIMS et al., Appellees.

No. 1293.

Court of Civil Appeals of Texas, Tyler.

Nov. 29, 1979.

---

Gus E. Meriwether, Sallas & Meriwether, Crockett, for appellants.

R. C. von Doenhoff, Carter, Gordon & von Doenhoff, Crockett, for appellees.

McKAY, Justice.

This is a will contest.

Lola Faye Henderson and James Ray Sims, appellants, children of the first marriage of J. O. Sims, deceased, brought suit against Lucy Sims, surviving wife of J. O. Sims, and Jack E. Sims and Mollie Mae Allen, children of the second marriage, appellees, alleging that the last will and testament of J. O. Sims was procured by undue influence. Trial was had before a jury which found there was undue influence. Appellees motion for judgment non obstante veredicto was granted by the trial court, and appellants bring this appeal.

The will was the joint will of J. O. Sims and Lucy Sims which devised to the survivor all of the estate, personal and mixed, separate, real or community of the first to die in full fee simple title. There was also a provision that read:

> "In making this will in favor of each other as beneficiaries, we are not unmindful of the welfare of our children, but each having implicit confidence in the other, is content to leave the good judgment of the survivor, the matter and terms of proper provision for our children, out of the estate."

Another section provided that if the testators died simultaneously or in a common accident then all of the property of either or both of them would pass and vest in their children, Jack E. Sims and Mollie Mae Allen, share and share alike.

Appellants bring one point of error in which they maintain that the trial court erred in granting appellees' motion for judgment n. o. v. because there was ample evidence to support the jury's findings. In order to sustain the action of the trial court in granting a motion for judgment n. o. v. there must be a determination that there was no evidence having probative force upon which the jury could have made the findings relied on. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194 (1952); *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547 (1962). In passing upon appellants' point the evidence must be considered

in a light most favorable to the jury's finding, considering the evidence and inferences which support the verdict and rejecting the evidence and inferences which are contrary. *Burt v. Lochausen, supra; Leyva v. Pacheco, supra; Grundmeyer v. McFadin,* 537 S.W.2d 764, 767–8 (Tex.Civ.App.-Tyler 1976, writ ref'd n. r. e.). A judgment notwithstanding a jury verdict can only be upheld on appeal when a directed verdict would have been proper. Rule 301, T.R.C.P.; *Grundmeyer v. McFadin, supra.*

It has been said that it is impossible to frame a definition of undue influence which embraces all forms and phases of the terms, or to lay down any hard and fast rule which would accurately control the question whether a given record contains affirmative evidence of undue influence. Each case is different from every other, and it must depend upon its own facts, circumstances and conditions. *Long v. Long,* 133 Tex. 96, 125 S.W.2d 1034, 1035 (1939); *Price v. Taliaferro,* 254 S.W.2d 157, 159 (Tex.Civ.App.-Fort Worth 1952, writ ref'd n. r. e.).

■ Appellants concede that the record here does not contain any direct evidence of the fact of undue influence; however, such fact may be established by circumstantial evidence. *Long v. Long, supra; Pearce v. Cross,* 414 S.W.2d 457 (Tex.1966). The contestant, appellants here, had the burden to prove undue influence, and by their one point the only question is whether there is in the record evidence of probative force which supports a jury finding that the will of J. O. Sims was procured by undue influence.

There was no objection to the definition of undue influence given by the trial court —"such influence or dominion by excessive importunities, imposition or fraud, exercised at the time of the making of said instrument, as destroys the free agency of the testator and overcomes his wishes in regard to the disposition of his property to such an extent that the instrument does in fact express his wishes as to the disposition of his property, but those of the person exercising such influence."

Appellants cite *Craycroft v. Crawford,* 285 S.W. 275 (Tex.Comm'n.App. 1926, jdmt. adopted, holding approved) as authority that the record here is sufficient to raise the issue of undue influence. Appellants argue that the will referred to his children but the testator named only the two of the second marriage as contingent beneficiaries, and the will was silent as to the two children of a previous marriage; that the two children of the second marriage were asked to and did accompany testator and his surviving wife to Huntsville when the attorney was requested to draft the will; and that such facts amount to sinister conduct on the part of Lucy Sims, the surviving wife. They further argue that the fact that the testator had been married twice, with children from both marriages, was enough to establish motive on the part of Lucy Sims to exert undue influence.

The record reveals that J. O. Sims married the mother of appellants and that they were divorced when appellants were infants. Appellants were so young they did not remember their parents living together. After the divorce appellants' mother moved to the Abilene area to live, and appellant James Ray Sims testified he was seven or eight years old before he saw his father when the father and his family were in the Abilene area picking cotton in 1933 or 1934. James Ray Sims further testified he stayed with his father and family when they were in Abilene, and that he and his sister wrote to his father and received letters from him, but that he did not see his father again until he was eighteen years of age when he went to near New Waverly, Texas, and spent about one week with his father and family before going into the army. He did not see his father again until he married in 1946 when he spent one night with him and family near Huntsville, and he saw his father two or three times when he (the father) lived in Houston. He said each visit in the home of his father and stepmother was nice and pleasant. His father visited him in Abilene on two other occasions, and when he was notified his father was ill in a Houston hospital he went to see him. He said his father asked every one to leave the

room except him and Jack, and then his father asked both of them, "but Jack in particular," to "see that everything was handled right without any trouble fairly and squarely." James Ray Sims was not present at the time or about the time the will was executed.

Appellant Lola Faye Henderson, twin sister of James Ray Sims, remembered first seeing her father when she was seven or eight years of age when he came to the Abilene area in 1933 or 1934 with his family and stayed two or three months. She next saw him in 1944 or 1945 when she was 17 or 18 and went to visit him and his family in the Huntsville area and stayed three or four months. She later married a man named Stutts and lived in the Huntsville area for three or four years during which time she visited her father and his family and he visited her home but without his wife Lucy. Lola Faye testified that she did not receive a very good reception from her step-mother Lucy, and Lucy never came to her house. She also testified that Lucy was partial to her own grandchildren, and that her father had to give presents to her children without Lucy knowing about it. Lola Faye and family also lived in Houston at the same time her father and Lucy did, and she visited in their home many times and her father visited in her home, but Lucy never came to visit and had never been in her house. Lola Faye moved back to Abilene in 1953 and lived there at the time of trial, but she returned to visit her father once or twice a year, and he visited her in Abilene two times accompanied by his son Jack. When she was notified of her father's illness she went to visit him in the hospital. Lola Faye testified that there was an unfriendly atmosphere every time she visited in her father's home, and that her father "cried his heart out and tried to make amends and apologies over the past," that "he loved us dearly and he had spent a lot of sleepless nights and he couldn't help the way the situation had been," and that such statements began when she was a teenager. These statements, Lola Faye said, were not made in the presence of testator's wife, Lucy, and her father never

gave gifts to Lola Faye's children in Lucy's presence.

Lola Faye also testified that she was not present when the will was signed and had no knowledge of what transpired at the time it was signed. She further said on several occasions when her father and Lucy disagreed on what he was going to do Lucy would influence him, she thought, by feigning a heart attack.

Lucy Sims testified that she and J. O. Sims never talked about his children by his first marriage, i. e., James Ray Sims and Lola Faye Henderson; that J. O. Sims never wrote to them and never talked to them by telephone; and that she made James Ray and Lola Faye welcome when they were in her home. She also said that she saw Lola Faye at the hospital when her father was ill but did not see James Ray.

Jack Sims testified he never had any discussion with his father about Lola Faye and James Ray Sims, but that he visited with them when he lived in Houston, and he would visit them when he drove his truck through Abilene. He also said he saw Ray and his wife in Conroe when he lived there, and that Faye and Ray visited his father in the hospital during his last illness, but that to his knowledge his father had no discussion with them.

Jack Sims testified that when his father was in the hospital in Houston his father asked him not to call James Ray and Lola Faye, but he called them because he thought it was his duty.

The foregoing outline of testimony is all the evidence produced by appellants that would or could have any bearing on the question of undue influence.

Appellants stipulated that the will had been admitted to probate; that the only contest as to the will was that it was not valid because of undue influence exerted upon the testator; and that the questions of testamentary capacity and whether the will was executed before two witnesses had not been raised.

Relying upon *Craycroft v. Crawford,* supra, and *Pearce v. Cross,* supra, appellants

argue that the issue of undue influence was raised by the evidence because (1) opportunity for undue influence has relevancy; (2) the mental condition of the testator was agitated because of the relationship with his children; and (3) because of the peculiar circumstances of the execution of the will.

■ In *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex.1963) it is said:

> "Thus, before a testament may be set aside on the grounds of undue influence the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence. See *Stewart v. Miller*, Tex.Civ.App. (1925), 271 S.W. 311, wr. refused; *Olds v. Traylor*, Tex.Civ.App. (1944), 180 S.W.2d 511, wr. refused."

> "The burden of proving undue influence is upon the party contesting its execution. It is, therefore, necessary for the contestant to introduce some tangible and satisfactory proof of the existence of each of the above stated elements of undue influence. *Scott v. Townsend*, 106 Tex. 322, 166 S.W. 1138."

■ Applying the foregoing rules, it is our view that the appellants, as contestants, did not discharge their burden of showing undue influence so as to raise an issue of fact for the jury. The record discloses that there was shown nothing more than an opportunity to exercise influence, and a will cannot be set aside on facts which at most do no more than show an opportunity to exercise influence. *Rothermal v. Duncan*, supra. It is natural that a wife or children might have some influence over the husband and father, but the record here is silent that there was effective operation of any influence which subverted or overpowered the mind of the testator *at the time* of the execution of the will, or that the testator would not have executed the will *but for* such influence.

■ It is not unusual nor unnatural but on the contrary normal, for spouses to execute joint wills leaving all property to the survivor. The spouses here had been married more than forty years, and from the record it appears that what property they had accumulated was acquired through the joint efforts of both. The will was executed in 1957—many years before his death. The will did provide that if both testators died in a common accident or disaster then the children of their marriage would inherit equally their estates. The fact that the children of his first marriage had not been close to him, and he had not seen them regularly, and apparently his wife did not make them welcome in his home could cause J. O. Sims to feel he had failed as their father; however, if that assumption may be made from the evidence it does not meet the test nor discharge the burden placed upon appellants. The fact that all of testator's children had not been made contingent beneficiaries alike does not create a presumption of undue influence. *Price v. Taliaferro*, 254 S.W.2d 157, 163 (Tex.Civ. App.-Fort Worth 1952, writ ref'd n. r. e.).

The facts in *Craycroft v. Crawford, supra*, relied upon by appellants, are so obviously distinguishable that they need not be set out here nor analyzed at length.

Considering all the evidence and the circumstances in the most favorable light for appellants we are of the opinion that there was no issue of undue influence raised for submission to a jury. An instructed verdict would have been proper. "A person of sound mind has a perfect legal right to dispose of his property as he wishes," and "the exertion of influence that was undue cannot be inferred alone from opportunity, but there must be some testimony, direct or circumstantial, to show that influence was not only present but that it was in fact exerted with respect to the *making of the testament itself." Rothermal v. Duncan, supra*. There is no such evidence in the record here.

See *Dulak v. Dulak*, 513 S.W.2d 205, 209 (Tex.1974); *Estate of Woods*, 542 S.W.2d 845, 847, 848 (Tex.1976); *Stieler v. Stieler*,

537 S.W.2d 954, 958, 959 (Tex.Civ.App.-Austin 1976, writ ref'd n. r. e.); *Ransom v. Iselt,* 554 S.W.2d 42 (Tex.Civ.App.-Eastland 1977, writ ref'd n. r. e.).

Judgment of the trial court is affirmed.