JOHNSON & CARLTON v. J. R. NASWORTHY.

(No. 6388.)

APPEAL from Tom Green County. Opinion by WHITE, P. J.

T. C. WINN and COCHRAN & HILL, counsel for appellants.

No counsel appeared for appellee.

§ 107. *Contracts; warranty; "appurtenances;" meaning of the word; case stated.* Appellants brought this suit to recover $295 on a contract which reads as follows: "The state of Texas, county of Tom Green. Know all men by these presents that I, John R. Nasworthy, of the county and state aforesaid, have and by these presents do agree to guaranty to Messrs. Johnson & Carlton, of Brazos county, Texas, for the term of one year, a monthly rental of $60 on the property sold them by me on the 20th day of April, 1886: provided, however, that buildings, improvements and appurtenances remain in the condition as on day of sale; otherwise this guaranty shall become null and void. Witness my hand, S. ANGELO, April 22, 1886. [Signed] JOHN R. NASWORTHY."

The property conveyed by Nasworthy, and the purchase
of which was the consideration for the above so-called
guaranty, was lot 22 and west half of lot 23, in block B,
San Angelo, Texas, together with all and singular the
rights and appurtenances thereto in any wise belonging.
No other description is given of the property conveyed.
Appellants, having realized in rents from said property
for the time mentioned in said contract of guaranty only
$425, brought this suit to recover of Nasworthy the sum
of $295, which was the difference between the aggregate
rental of said property for one year, as guarantied by
appellee, and the sum of $425, the amount actually re-
ceived by them on said rents.   On July 3, 1888, appellee
answered, and, in addition to the general denial, pleaded
specially that he was discharged from any liability on the
contract, in that, at the time of the sale to appellants
and the execution of said contract, there was a black-
smith and work shop on the premises, and a large num-
ber of valuable tools and implements belonging to the
work and blacksmith shop, which passed by the sale, and
formed a part of the appurtenances referred to in the
contract; that appellants took possession of all of said
property immediately after the sale, and had exercised
exclusive control over it ever since; and that within sixty
days after they took possession they removed, or per-
mitted to be removed and carried away, without the
knowledge or consent of appellee, all of the tools that
were valuable for the purposes of said shop, and thereby
destroyed the rental value of said property.   Appellee
further pleaded that the failure to obtain the rental of
$60 per month was concealed from him until after the
contract had expired. The cause was tried before a jury,
and verdict and judgment rendered for appellee.

One of the main points in the case is to determine the
meaning of the word "appurtenances," as used in the
so-called contract of guaranty.   It will be noticed that
appellee in his answer claimed that the tools and imple-

ments belonging to the work and blacksmith shop constituted a part of the "appurtenances" referred to in the contract; and it seems that this was the opinion of the learned trial judge, for he permitted the witness Lerch, over plaintiffs' objection, to testify, as shown by bill of exceptions No. 2, that the tools in the blacksmith shop on the premises sold were part of the appurtenances in the sale of the lots, and were referred to as a part of the appurtenances in the deed of conveyance to the lots, and also in the contract sued on.   Appurtenances are things belonging to another thing as principal, and which pass as incident to the principal thing.   The term, as used in conveyances, passes nothing but the land and such things as belong thereto and are part of the realty; or, as some of the authorities put it, whatever is necessary to the commodious enjoyment of a thing.  [Burrill, Law Dict.; Bouv., Law Dict., "Appurtenances;" 1 Amer. & Eng. Enc. Law, 641 et seq.]  In Frey v. Drahos, 6 Neb. 1, it was held by the supreme court of Nebraska that "by the term 'appurtenances' is commonly understood in law purely incorporeal hereditaments, usually annexed to lands or to houses.  But the word may be used by parties to a contract in a broader and more comprehensive sense, and when the proof shows that it was so used a corresponding effect should be given to it."   It was held, however, in the same case, that, "where there is no ambiguity in the description of property in the deed, parol testimony is not admissible to show what was in fact conveyed; nor is it competent for a witness to give his opinion as to what was appurtenant to property conveyed."  [Ragsdale v. Mays, 65 Tex. 255.]  The word "appurtenances" has a meaning too well defined and understood in law, when used in deeds and contracts relating to real estate, to require or need explanation on the ground of ambiguity, and parol evidence is not admissible to vary its meaning and enlarge its well-known signification.   The court erred in permitting the witness

Lerch to vary the terms of the written instruments by testifying that the tools and implements in the black-smith shop were embraced in the appurtenances mentioned in the deed and contract of guaranty. [1 Civil Cas. Ct. App., §§ 7, 1180, 1306.] The terms of the written instrument were plain and unambiguous, and there was no allegation of fraud or mistake. [Belcher v. Mulhall, 57 Tex. 17; Bruner v. Strong, 61 Tex. 555.]

§ 108. *Guaranty and warranty; distinction between; warrantor, to be entitled to notice, must stipulate for it.* Again, in paragraph 2 of the court's charge to the jury, the plaintiffs' right to recover upon the contract of guaranty was made to depend upon the giving of due notice to appellee of the failure of plaintiffs to obtain the stipulated rental; and the fourth paragraph was as follows: "You are charged that it was the duty of the plaintiff to notify the defendant, at the time he failed to secure said $60 per month as rental for said property, and [he] can only recover from said defendant from the time said plaintiff gave notice to said defendant." The contract of guaranty did not require such notice to be given. The only condition attached to it was that the "buildings, improvements and appurtenances remain in condition as on day of sale." Plaintiffs alleged that they had used due care, diligence and attention in the renting of the premises, so as to make them bring the highest rental possible, and that the premises, buildings, improvements and appurtenances during said time were in as good condition as on the day of sale. These allegations were necessary, and they were sufficient to state the right of action. [Evans v. Bell, 45 Tex. 553.] In this case Nasworthy was not a "guarantor," in the legal sense of the word. "A 'guarantor' is one who becomes responsible for the debt, default or miscarriage of another." [Brandt, Sur., § 1.] "A 'guaranty' is a collateral undertaking to pay a debt or perform a duty in case of the failure of another person, who is in the first instance liable to such

payment or performance." [9 Amer. & Eng. Enc. Law, 67.] "In general, where the liability of the guarantor is collateral and not absolute, and is dependent upon the fault of another, notice of such default must be given within a reasonable time. But when the guaranty absolutely and unconditionally provides that the principal shall pay a given sum at a stated time, no notice of default is necessary before suing the guarantor." [Id., 79.] But, as above stated, though Nasworthy's undertaking is called a "guaranty," was it in fact such? We think not. There was no principal or other person for whose acts or defaults he was binding himself. He was himself the principal in the undertaking. Instead of a guaranty, his undertaking was, in fact and law, a warranty that the property should bring $60 per month rent for twelve months. "A 'warranty' is an express or implied statement of something which a party undertakes shall be part of a contract, and, though part of the contract, collateral to the express object of it." [Benj. Sales, § 600.] Nasworthy did not stipulate that he was to have notice if the property failed to bring $60 per month rent, and he was not entitled to demand any such notice as a condition precedent to liability on his contract. The charge of the court in thus limiting his liability was erroneous.

May 10, 1890.                    Reversed and remanded.