In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00067-CV


______________________________




JOHN BRECKENRIDGE, SHIRLEY BRECKENRIDGE,


RICHARD HAAS, AND KAREN HAAS, Appellants



V.



NATIONSBANK OF TEXAS, N.A., Appellee




 


On Appeal from the County Court at Law No. 3


Harris County, Texas


Trial Court No. 713,780




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Nationsbank of Texas, N.A. sued John Breckenridge, Shirley Breckenridge, Richard
Haas, and Karen Haas (Appellants) for damages arising from a breach of a retail
installment contract for the sale of a mobile home, and for possession of the mobile home,
which served as collateral under the contract. The Bank pled breach of contract by the
Breckenridges and conversion by the Haases. The Breckenridges filed counterclaims
against the Bank for violations of the Truth-in-Lending Act and the Texas Deceptive Trade
Practices Act. (1) After a bench trial, the court rendered judgment in favor of the Bank
against the Breckenridges jointly and severally for $68,638.39, prejudgment interest from
September 5, 2000, to the end of the trial, attorney's fees, postjudgment interest, all costs
incurred by the Bank, and the recovery by the Bank of the mobile home. The court
rendered judgment in favor of the Bank against the Haases, ordering the Haases to
immediately remove themselves from and quit the mobile home. The court rendered
judgment in favor of the Bank on the claims of violations of the Truth-in-Lending Act. The
court rendered judgment in favor of the Breckenridges against the Bank on their
counterclaim under the Deceptive Trade Practices Act (DTPA) for forum abuse, awarding
the Breckenridges $115.20 and $2,500.00 in attorney's fees. The Bank does not challenge
the court's ruling on abuse of forum under the DTPA.

 The Appellants allege three points of error. They first contend the trial court erred
in denying their motion to dissolve a writ of sequestration. Second, the Appellants contend
the trial court erred in granting judgment in favor of the Bank because the Breckenridges
established all of their affirmative defenses: (a) presentment and demand, (b) notice of
default and opportunity to cure, and (c) waiver of timely payment. Finally, the Appellants
contend the trial court erred in finding the Bank did not violate the Truth-in-Lending Act.

 The Bank is the assignee of a retail installment contract signed by the
Breckenridges. The Breckenridges signed the contract as "joint purchasers" in March 1998
for the purchase of a mobile home from Victory Mobile Homes, a dealer located in Spring,
Texas. The Breckenridges promised "to pay the Secured Party or its Assigns" in
accordance with the terms of the contract. According to the testimony, the Breckenridges
purchased the mobile home for the Haases, their daughter and son-in-law, and the Haases
were to make the payments. Although there was no written agreement, Richard testified
the agreement between the Haases and the Breckenridges was that the Breckenridges
were "not going to pay a dime." The installment contract for the mobile home is not
assumable, and neither of the Haases is a party to that contract. There is no evidence in
the record that the Breckenridges ever made any monthly payments as provided in the
contract.

 From the beginning of the contract, the Appellants were continuously behind in their
payments to the Bank. The first payment was due in April 1998. The Bank contacted the
Breckenridges on May 7, 1998, regarding the April payment and was informed the Haases
were to make payments. On May 7, 1998, the Bank contacted Richard, who said he would
mail the payment that day. On May 21, 1998, the Bank again contacted the Breckenridges
regarding the delinquent April payment. John again informed the Bank the Haases lived
in the mobile home and were to make the payments. John gave the Bank the Haases'
telephone number. Despite letters from the Bank regarding notice of default and the right
to cure the default, the Appellants remained behind in payments until bringing the account
current on September 23, 1998. 

 The Appellants made no more payments after curing the default in September 1998. 
Richard testified he has no recollection of making any payments after September 1998. 
The Bank left messages with Richard and the Breckenridges in November regarding the
October payment. On December 2, 1998, the Bank informed the Breckenridges that the
Haases had failed to return the Bank's calls, that the account would not be held any longer,
and that satisfactory arrangements must be made by the next day or the matter would be
referred out for repossession. On December 5, 1998, the Breckenridges reported to the
Bank that the Haases were not returning their calls, either. They told the Bank to proceed
with posting an eviction notice and picking up the mobile home. The Haases never
vacated the mobile home, and the Bank sued to recover the debt and for possession of the
mobile home.

 In their first point of error, the Appellants contend the trial court wrongfully issued
and should have dissolved the writ of sequestration. They contend the trial court erred in
finding the hearing on the motion to dissolve the writ of sequestration was untimely. On
March 11, 1999, the trial court granted the Bank's ex parte application for writ of
sequestration. In May 1999, Richard filed a motion pro se to quash the writ, signing it on
his behalf and purportedly on behalf of his wife. Richard failed to request a hearing on the
motion, but the Bank never followed through on seeking execution of the writ. In February
2000, the trial court entered a default judgment as to all four defendants, but granted a new
trial in the case in March 2000. On May 22, 2000, the Appellants filed a motion to dissolve
the writ of sequestration, and a hearing was set for May 31, 2000. The hearing was
postponed by informal agreement of the parties until June 29, 2000. Then, pursuant to a
written Rule 11 agreement, the hearing was again postponed until August 23, 2000. On
the date of the hearing, the trial court denied the Appellants' motion to dissolve the writ of
sequestration without receiving any evidence, ruling on the record the hearing was untimely
for not being held within ten days of the filing of the motion. See Tex. Civ. Prac. & Rem.
Code Ann. § 62.042 (Vernon 1997). The trial court denied the Appellants' motion for
reconsideration on August 25, 2000. 

 The Bank contends the Appellants were not entitled to file the May 22, 2000, motion
to dissolve the writ of sequestration because Richard had filed a motion to quash in May
1999. The Bank implies that all the Appellants were bound by Richard's motion and that 
the trial court could not consider the May 22, 2000, motion. However, the Bank never
objected to the Appellants' filing of the May 22, 2000, motion. By failing to object, the Bank
has waived this complaint on appeal. Tex. R. App. P. 33.1. We address the Appellants'
complaint that the trial court erred in failing to dissolve the writ of sequestration.

 The trial court properly denied the motion to dissolve because no hearing was held
within ten days of the filing of the May 22, 2000, motion. Under Section 62.042, "Unless
the parties agree to an extension, the court shall conduct a hearing on the motion and
determine the issue not later than the 10th day after the motion is filed." Tex. Civ. Prac.
& Rem. Code Ann. § 62.042. Rule 712a also requires that the motion to dissolve be
determined not later than ten days after the motion is filed. Tex. R. Civ. P. 712a. The
hearing on the motion occurred well after the ten-day requirement.

 The Bank opposed the motion to reconsider the denial of the motion to dissolve,
asserting that, unless all the agreements to postpone the hearing on the motion were in
writing pursuant to Rule 11, the hearing was untimely. See Tex. R. Civ. P. 11. There is no
written agreement in the record between the parties regarding the postponement of the
May 31 hearing. There is a written agreement concerning the postponement of the
June 29, 2000, hearing. 

 Rule 11 requires, "Unless otherwise provided in these rules, no agreement between
attorneys or parties touching any suit pending will be enforced unless it be in writing,
signed and filed with the papers as part of the record, or unless it be made in open court
and entered of record." The Appellants contend Rule 11 is inapplicable. They assert that
"there was no rule like Rule 11 in effect at the time the sequestration statute was amended
in 1975 (nor when the amended sequestration rule was promulgated in 1978), and thereby
no legislative intent to require agreements to postpone dissolution hearings to be in
writing." This contention is incorrect. Rule 11 of the Texas Rules of Civil Procedure
became effective on September 1, 1941. Kennedy v. Hyde, 682 S.W.2d 525, 528 (Tex.
1984); Alcantar v. Okla. Nat'l Bank, 47 S.W.3d 815, 819 n.2 (Tex. App.-Fort Worth 2001,
no pet.).

 This rule is not of recent origin, but can be traced in substantially its
present form to District Court Rule 28, adopted in 1840 under the laws of the
Republic of Texas, 1 Tex. 849, 852 (1848), and recodified as District and
County Court Rule 47 in 1877 by authority of article V, section 25 of the
Texas Constitution. See 47 Tex. 597, 625 (1877).

 

Kennedy, 682 S.W.2d at 526. "Rule 47 was amended in 1892 by adding the phrase 'or
unless it be made in open court and entered of record.' 84 Tex. 695, 715, 19 S.W. 889." 
Id. at 526 n.1. The portion of Rule 11 at issue in this case is unchanged since 1877. The
original rationale for the rule was stated cogently in Birdwell v. Cox, 18 Tex. 535, 537
(1857):

 Agreements of counsel, respecting the disposition of causes, which are
merely verbal, are very liable to be misconstrued or forgotten, and to beget
misunderstandings and controversies; and hence there is great propriety in
the rule which requires that all agreements of counsel respecting their
causes shall be in writing, and if not, the court will not enforce them. They
will then speak for themselves, and the court can judge of their import, and
proceed to act upon them with safety. The rule is a salutary one, and ought
to be adhered to whenever counsel disagree as to what has transpired
between them.


 Even if Rule 11 had not been in existence at the time the rules governing
sequestration proceedings were adopted, the Rules of Civil Procedure govern all
proceedings brought after those rules took effect September 1, 1941. Tex. R. Civ. P. 814; 
Stieler v. Stieler, 537 S.W.2d 954, 956-57 (Tex. Civ. App.-Austin 1976, writ ref'd n.r.e.)
(despite referral to effective date of September 1, 1941, Rule 814 has been applied to
subsequent amendments to rules).

 The Appellants' alternative argument that "slavish adherence" to the language of
Rule 11 is not required in all cases is correct. Kennedy, 682 S.W.2d at 529. However, we
review the trial court's adherence to such rule under an abuse of discretion standard. The
test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts
present an appropriate case for the trial court's action; rather, it is a question of whether
the court acted without reference to any guiding rules or principles, and the mere fact that
a trial court may decide a matter within its discretionary authority differently than an
appellate court does not demonstrate such an abuse. Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 

 Under an abuse of discretion standard, the court of appeals cannot overrule the trial
court's decision unless the trial court acted unreasonably or in an arbitrary manner, without
reference to guiding rules or principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223,
226 (Tex. 1991). Moreover, the court of appeals cannot substitute its judgment for the trial
court's reasonable judgment even if it would have reached a contrary conclusion. Walker
v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992); Beaumont Bank, N.A., 806 S.W.2d at
226. The trial court does not abuse its discretion if some evidence reasonably supports
the trial court's decision. Rugen v. Interactive Bus. Sys., 864 S.W.2d 548, 551 (Tex.
App.-Dallas 1993, no writ). 

 In this case, the trial court did not act without guiding principles. Rule 11 clearly
states the trial court is not bound by oral agreements between the parties. The trial court
was faced with a hearing clearly scheduled outside the ten-day time frame mandated by
statute, and there was no agreement in the record showing the parties agreed to the
postponement. The trial court did not abuse its discretion in applying Rule 11.

 In their second point, the Appellants complain the trial court erred in failing to file
additional findings of fact and conclusions of law in response to their properly and timely
requested additional findings of facts and conclusions of law on the elements of their
affirmative defenses. We found that the Appellants were correct and abated the case to
the trial court to make the requested findings. (2) The trial court filed these additional findings
of facts and conclusions of law, and we requested supplemental briefing from the parties
as to these findings. 

 The Appellants contend the trial court erred in finding against them on their
affirmative defenses. They contend the evidence is legally and factually insufficient to
support the trial court's findings. The Appellants pled three affirmative defenses: 
(a) presentment and demand; (b) notice of default and opportunity to cure; and (c) waiver
of timely payment. The Appellants had the burden of proof on their affirmative defenses. 
The appropriate challenge to a fact-finder's finding concerning an issue on which the
complaining party had the burden of proof is either a matter of law point or a great weight
and preponderance point. Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d
264, 275-76 (Tex. App.-Amarillo 1988, writ denied).

 In reviewing matter of law points, we must examine the record for evidence that
supports the finding, ignoring any evidence to the contrary; and, if there is no evidence to
support the finding, we must then examine the entire record to determine if a contrary
proposition is established as a matter of law. Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001). In reviewing great weight and preponderance points, we must examine
the entire record to determine if there is some evidence to support the finding, and then
determine whether, in light of the entire record, the finding is manifestly unjust. Traylor v.
Goulding, 497 S.W.2d 944, 945 (Tex. 1973); In re King's Estate, 150 Tex. 662, 244 S.W.2d
660, 661 (1951).

 The Appellants contend the court erred in finding the Breckenridges waived their
right to presentment and demand by signing the retail installment contract as guarantors. 
John signed the contract as purchaser and guarantor, and Shirley signed as joint
purchaser and guarantor. The guaranty provision of the contract includes the following
language: "The undersigned consent to and waive . . . presentment, demand, protest,
notice of protest, notice of dishonor and any other conditions to the liability of the
undersigned under this guaranty." In its conclusions of law, the trial court found that the
Breckenridges waived acceptance, presentment, demand, protest, notice of protest, notice
of dishonor, and any other conditions of their liability by executing the guaranty portion of
the contract. 

 The Appellants contend that, despite the language of the guaranty provision, the
Breckenridges did not waive their right to presentment and demand. They assert that a
strict, narrow reading of the guarantor provision is required because, in the construction
of language in a contract, we ordinarily give the language its plain, grammatical meaning. 
Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987). The Appellants contend
that such a reading of the guaranty provision limits the waiver of the Breckenridges to their
role as guarantors and that there is no evidence the Breckenridges waived presentment
and demand in their capacity as makers of the contract.

 The Appellants further contend the Breckenridges may not simultaneously be
makers and guarantors. Their contention is that, because the Breckenridges are already
responsible for making payments under the contract as "Purchasers," their execution of
the guaranty section is of no effect. They cite Eubank v. First Nat'l Bank, 814 S.W.2d 130,
133-34 (Tex. App.-Corpus Christi 1991, no writ); Dann v. Team Bank, 788 S.W.2d 182,
184-85 (Tex. App.-Dallas 1990, no writ); and Johnson v. Nasworthy, 16 S.W. 758, 759-60,
4 Willson 164 (Tex. Ct. App. 1890), for the proposition that a principal obligor under a
contract may not act as his or her own guarantor.

 However, the Bank sued the Breckenridges generally under the note, thereby suing
them in both capacities, as makers and guarantors. The Breckenridges failed to file a
verified denial that they were liable under the note in their capacity as guarantors. See
Tex. R. Civ. P. 93. Failure to verifiably deny liability in a capacity in which a party is sued
waives the right to complain on appeal that such party is not liable in that capacity. Werner
v. Colwell, 909 S.W.2d 866, 870 (Tex. 1995). By failing to file a verified denial that they
were liable in the capacity of guarantors, the Breckenridges waived their complaint on
appeal that they cannot be liable in that capacity.

 In their third point of error, the Appellants contend the trial court erred in finding the
Bank did not violate the Truth-in-Lending Act. The Appellants complained the trial court
failed to file additional findings of fact and conclusions of law in response to their properly
and timely requested additional findings of fact and conclusions of law on the elements of
the Truth-in-Lending Act. We found the trial court should have filed these additional
findings of fact and conclusions of law, and abated the case to the trial court to make the
requested findings. The trial court filed these additional findings of fact and conclusions
of law, and we requested supplemental briefing from the parties as to these findings. 

 The Appellants contend the trial court erred in finding the federal Truth-in-Lending
Act does not apply to this case as a matter of law. The trial court held the contract
evidences a transaction that is an "exempted transaction" as defined by Section 1603 of
the Truth-in-Lending Act. (3) The Truth-in-Lending Act does not apply to "[c]redit
transactions, other than those in which a security interest is or will be acquired in real
property, or in personal property used or expected to be used as the principal dwelling of
the consumer, in which the total amount financed exceeds $25,000." 15 U.S.C.A.
§ 1603(3) (West 1998). The Appellants contend the trial court erred in holding the
transaction was exempt because the Bank has waived this defense by failing to plead it
before trial.

 The Appellants contend the exemption to the statute is like an affirmative defense
that is waived if not affirmatively pled. However, the burden to show that the transaction
falls within the Truth-in-Lending Act is on the Appellants in this case. In order to establish
the creditor's liability under the Truth-in-Lending Act, the complaining party must show that
the disputed transaction is the type of transaction covered by the Act. Katz v. Carte
Blanche Corp., 496 F.2d 747, 751 (3d Cir. 1974); Gambosi v. Carteret Mortgage Corp., 894
F. Supp. 176, 180 (E.D. Penn. 1995), aff'd without opinion, 91 F.3d 123 (3rd Cir. 1996)
(plaintiff bears burden of showing a disputed transaction is covered by Truth-in-Lending
Act); Brekke v. Volcker, 652 F. Supp. 651, 654 (D. Mont. 1987) (plaintiffs failed to allege
facts from which court could conclude Truth-in-Lending Act was applicable); McDonnell
v. Von Felt, 604 N.W.2d 305 (Wis. Ct. App. 1999). "[J]urisdiction depends upon an
extension of credit, wherein the underlying transaction qualifies as a consumer credit
transaction and not one for 'business or commercial purposes.'" Gerasta v. Hibernia Nat'l
Bank, 411 F. Supp. 176, 185 (E.D. La. 1975), aff'd in part & rev'd in part on other grounds,
575 F.2d 580 (5th Cir. 1978); see 15 U.S.C.A. §§ 1601, 1602(h). 

 The Appellants point to United States v. First City Nat'l Bank, 386 U.S. 361, 366, 87
S.Ct. 1088, 18 L.Ed.2d 151 (1967), and Fed. Trade Comm'n v. Morton Salt Co., 334 U.S.
37, 44-45, 68 S.Ct. 822, 92 L.Ed. 1196 (1948), in support of their contention the Bank had
the burden of proof to show this transaction was exempt under the statute. These cases
hold that the general rule is the party who claims the benefits of an exception to the
prohibition of a statute bears the burden of proof. First City Nat'l Bank, 386 U.S. at 366;
Morton Salt Co., 334 U.S. at 44-45. Both of these cases dealt with situations where the
actions of the defendants were generally prohibited by law. First City National Bank
involved the merger of two banks and whether they were exempt from prohibitions of
merging under antitrust laws via an exemption. This is not a case in the Truth-in-Lending
Act. As the more recent decision from the Third Circuit holds, the burden is on the plaintiff
alleging violation of the Truth-in-Lending Act to show that the transaction is the type
covered by the Act. Katz, 496 F.2d at 751. The court found the amount financed exceeds
$25,000.00; the contract relates to personal property, not real property; and the
Breckenridges affirmatively represented that the mobile home acquired was not to be their
principal dwelling. The evidence proves the transaction qualifies as an exempt transaction
under Section 1603(3).

 In their motion for rehearing, the Appellants correctly point out that the Truth-in-Lending Act is to be construed strictly against creditors and liberally in favor of consumers. 
Inge v. Rock Fin. Corp., 281 F.3d 613, 621 (6th Cir. 2002); Fairley v. Turan-Foley Imports,
Inc., 65 F.3d 475, 477, 482 (5th Cir. 1995). In Inge, the court reversed the district court's
finding that the plaintiff had failed to state a claim by holding that the plaintiff had
sufficiently pled her cause of action and is limited to an interpretation of Section 1605(f) of
the Truth-in-Lending Act. Inge, 281 F.3d at 621-22. We find the Bank did not have to
plead the transaction's exemption as an affirmative defense and affirm the trial court's
finding regarding the Truth-in-Lending Act. Because the Appellants did not attack the
merits of the trial court's findings, we need not address whether the trial court's findings
regarding the transaction were correct.

 We affirm the judgment. 



 Donald R. Ross

 Justice


Date Submitted: February 28, 2002

Date Decided: May 1, 2002


Publish

1. See 15 U.S.C.A. § 1601, et seq. (West 1998 & Supp. 2001); Tex. Bus. & Com.
Code Ann. § 17.01, et seq. (Vernon 1987 & Supp. 2002).
2. See Buzbee v. Buzbee, 870 S.W.2d 335, 336 (Tex. App.-Waco 1994, no writ),
where the same procedure was followed.
3. The following exemptions are provided in the Act: 


 (1) Credit transactions involving extensions of credit primarily for
business, commercial, or agricultural purposes, or to government or
governmental agencies or instrumentalities, or to organizations. 


 (2) Transactions in securities or commodities accounts by a
broker-dealer registered with the Securities and Exchange Commission. 


 (3) Credit transactions, other than those in which a security interest
is or will be acquired in real property, or in personal property used or
expected to be used as the principal dwelling of the consumer, in which the
total amount financed exceeds $25,000. 


 (4) Transactions under public utility tariffs, if the Board determines
that a State regulatory body regulates the charges for the public utility
services involved, the charges for delayed payment, and any discount
allowed for early payment. 


 (5) Transactions for which the Board, by rule, determines that
coverage under this subchapter [15 U.S.C.A. § 1601, et seq.] is not
necessary to carry out the purposes of this subchapter. 


 . . . .


 (7) Loans made, insured, or guaranteed pursuant to a program
authorized by Title IV of the Higher Education Act of 1965 (20 U.S.C. 1070
et seq.).


15 U.S.C.A. § 1603 (West 1998).