John **BRECKENRIDGE**, Shirley Breckenridge, Richard Haas, and Karen Haas, Appellants,

v.

**NATIONSBANK OF TEXAS, N.A.**, Appellee.

No. 06–01–00067–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 28, 2002.

Decided May 21, 2002.

Richard Tomlinson, Houston, for appellants.

Michael D. Conner, Eric S. Lipper, Hirsch & Westheimer, PC, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Nationsbank of Texas, N.A. sued John Breckenridge, Shirley Breckenridge, Richard Haas, and Karen Haas (Appellants) for damages arising from a breach of a retail installment contract for the sale of a mobile home, and for possession of the mobile home, which served as collateral under the contract. The Bank pled breach of contract by the Breckenridges and conversion by the Haases. The Breckenridges filed counterclaims against the Bank for violations of the Truth–in–Lending Act and the Texas Deceptive Trade Practices Act.[1] After a bench trial, the court rendered judgment in favor of the Bank against the Breckenridges jointly and severally for $68,638.39, prejudgment interest from September 5, 2000, to the end of the trial, attorney's fees, postjudgment interest, all costs incurred by the Bank, and the recovery by the Bank of the mobile home. The court rendered judgment in favor of the Bank against the Haases, ordering the Haases to immediately remove themselves from and quit the mobile home. The court rendered judgment in favor of the Bank on the claims of violations of the Truth–in–Lending Act. The court rendered judgment in favor of the Breckenridges against the Bank on their counterclaim under the Deceptive Trade Practices Act (DTPA) for forum abuse, awarding the Breckenridges $115.20 and $2,500.00 in attorney's fees.

The Bank does not challenge the court's ruling on abuse of forum under the DTPA.

The Appellants allege three points of error. They first contend the trial court erred in denying their motion to dissolve a writ of sequestration. Second, the Appellants contend the trial court erred in granting judgment in favor of the Bank because the Breckenridges established all of their affirmative defenses: (a) presentment and demand, (b) notice of default and opportunity to cure, and (c) waiver of timely payment. Finally, the Appellants contend the trial court erred in finding the Bank did not violate the Truth–in–Lending Act.

The Bank is the assignee of a retail installment contract signed by the Breckenridges. The Breckenridges signed the contract as "joint purchasers" in March 1998 for the purchase of a mobile home from Victory Mobile Homes, a dealer located in Spring, Texas. The Breckenridges promised "to pay the Secured Party or its Assigns" in accordance with the terms of the contract. According to the testimony, the Breckenridges purchased the mobile home for the Haases, their daughter and son-in-law, and the Haases were to make the payments. Although there was no written agreement, Richard testified the agreement between the Haases and the Breckenridges was that the Breckenridges were "not going to pay a dime." The installment contract for the mobile home is not assumable, and neither of the Haases is a party to that contract. There is no evidence in the record that the Breckenridges ever made any monthly payments as provided in the contract.

From the beginning of the contract, the Appellants were continuously behind in their payments to the Bank. The first pay-

---

1.  See 15 U.S.C.A. § 1601, et seq. (West 1998 & Supp.2001); Tex. Bus. & Com.Code Ann. § 17.01, et seq. (Vernon 1987 & Supp.2002).

ment was due in April 1998. The Bank contacted the Breckenridges on May 7, 1998, regarding the April payment and was informed the Haases were to make payments. On May 7, 1998, the Bank contacted Richard, who said he would mail the payment that day. On May 21, 1998, the Bank again contacted the Breckenridges regarding the delinquent April payment. John again informed the Bank the Haases lived in the mobile home and were to make the payments. John gave the Bank the Haases' telephone number. Despite letters from the Bank regarding notice of default and the right to cure the default, the Appellants remained behind in payments until bringing the account current on September 23, 1998.

The Appellants made no more payments after curing the default in September 1998. Richard testified he has no recollection of making any payments after September 1998. The Bank left messages with Richard and the Breckenridges in November regarding the October payment. On December 2, 1998, the Bank informed the Breckenridges that the Haases had failed to return the Bank's calls, that the account would not be held any longer, and that satisfactory arrangements must be made by the next day or the matter would be referred out for repossession. On December 5, 1998, the Breckenridges reported to the Bank that the Haases were not returning their calls, either. They told the Bank to proceed with posting an eviction notice and picking up the mobile home. The Haases never vacated the mobile home, and the Bank sued to recover the debt and for possession of the mobile home.

In their first point of error, the Appellants contend the trial court wrongfully issued and should have dissolved the writ of sequestration. They contend the trial court erred in finding the hearing on the motion to dissolve the writ of sequestration was untimely. On March 11, 1999, the trial court granted the Bank's ex parte application for writ of sequestration. In May 1999, Richard filed a motion pro se to quash the writ, signing it on his behalf and purportedly on behalf of his wife. Richard failed to request a hearing on the motion, but the Bank never followed through on seeking execution of the writ. In February 2000, the trial court entered a default judgment as to all four defendants, but granted a new trial in the case in March 2000. On May 22, 2000, the Appellants filed a motion to dissolve the writ of sequestration, and a hearing was set for May 31, 2000. The hearing was postponed by informal agreement of the parties until June 29, 2000. Then, pursuant to a written Rule 11 agreement, the hearing was again postponed until August 23, 2000. On the date of the hearing, the trial court denied the Appellants' motion to dissolve the writ of sequestration without receiving any evidence, ruling on the record the hearing was untimely for not being held within ten days of the filing of the motion. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 62.042 (Vernon 1997). The trial court denied the Appellants' motion for reconsideration on August 25, 2000.

■   The Bank contends the Appellants were not entitled to file the May 22, 2000, motion to dissolve the writ of sequestration because Richard had filed a motion to quash in May 1999. The Bank implies that all the Appellants were bound by Richard's motion and that the trial court could not consider the May 22, 2000, motion. However, the Bank never objected to the Appellants' filing of the May 22, 2000, motion. By failing to object, the Bank has waived this complaint on appeal. TEX.R.APP. P. 33.1. We address the Appellants' complaint that the trial court erred

in failing to dissolve the writ of sequestration.

■ The trial court properly denied the motion to dissolve because no hearing was held within ten days of the filing of the May 22, 2000, motion. Under Section 62.042, "Unless the parties agree to an extension, the court shall conduct a hearing on the motion and determine the issue not later than the 10th day after the motion is filed." TEX. CIV. PRAC. & REM.CODE ANN. § 62.042. Rule 712a also requires that the motion to dissolve be determined not later than ten days after the motion is filed. TEX.R. CIV. P. 712a. The hearing on the motion occurred well after the ten-day requirement.

The Bank opposed the motion to reconsider the denial of the motion to dissolve, asserting that, unless all the agreements to postpone the hearing on the motion were in writing pursuant to Rule 11, the hearing was untimely. *See* TEX.R. CIV. P. 11. There is no written agreement in the record between the parties regarding the postponement of the May 31 hearing. There is a written agreement concerning the postponement of the June 29, 2000, hearing.

■ Rule 11 requires, "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." The Appellants contend Rule 11 is inapplicable. They assert that "there was no rule like Rule 11 in effect at the time the sequestration statute was amended in 1975 (nor when the amended sequestration rule was promulgated in 1978), and thereby no legislative intent to require agreements to postpone dissolution hearings to be in writing." This contention is incorrect. Rule 11 of the Texas Rules of Civil Procedure

became effective on September 1, 1941. *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex.1984); *Alcantar v. Okla. Nat'l Bank*, 47 S.W.3d 815, 819 n. 2 (Tex.App.-Fort Worth 2001, no pet.).

This rule is not of recent origin, but can be traced in substantially its present form to District Court Rule 28, adopted in 1840 under the laws of the Republic of Texas, 1 Tex. 849, 852 (1848), and recodified as District and County Court Rule 47 in 1877 by authority of article V, section 25 of the Texas Constitution. *See* 47 Tex. 597, 625 (1877).

*Kennedy*, 682 S.W.2d at 526. "Rule 47 was amended in 1892 by adding the phrase 'or unless it be made in open court and entered of record.' 84 Tex. 695, 715, 19 S.W. 889." *Id.* at 526 n. 1. The portion of Rule 11 at issue in this case is unchanged since 1877. The original rationale for the rule was stated cogently in *Birdwell v. Cox*, 18 Tex. 535, 537 (1857):

> Agreements of counsel, respecting the disposition of causes, which are merely verbal, are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies; and hence there is great propriety in the rule which requires that all agreements of counsel respecting their causes shall be in writing, and if not, the court will not enforce them. They will then speak for themselves, and the court can judge of their import, and proceed to act upon them with safety. The rule is a salutary one, and ought to be adhered to whenever counsel disagree as to what has transpired between them.

Even if Rule 11 had not been in existence at the time the rules governing sequestration proceedings were adopted, the Rules of Civil Procedure govern all proceedings brought after those rules took effect September 1, 1941. TEX.R. CIV. P.

814; *Stieler v. Stieler*, 537 S.W.2d 954, 956–57 (Tex.Civ.App.-Austin 1976, writ ref'd n.r.e.) (despite referral to effective date of September 1, 1941, Rule 814 has been applied to subsequent amendments to rules).

■■■ The Appellants' alternative argument that "slavish adherence" to the language of Rule 11 is not required in all cases is correct. *Kennedy*, 682 S.W.2d at 529. However, we review the trial court's adherence to such rule under an abuse of discretion standard. The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

■■■ Under an abuse of discretion standard, the court of appeals cannot overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). Moreover, the court of appeals cannot substitute its judgment for the trial court's reasonable judgment even if it would have reached a contrary conclusion. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992); *Beaumont Bank, N.A.*, 806 S.W.2d at 226. The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *Rugen v. Interactive Bus. Sys.*, 864

S.W.2d 548, 551 (Tex.App.-Dallas 1993, no writ).

■■■ In this case, the trial court did not act without guiding principles. Rule 11 clearly states the trial court is not bound by oral agreements between the parties. The trial court was faced with a hearing clearly scheduled outside the ten-day time frame mandated by statute, and there was no agreement in the record showing the parties agreed to the postponement. The trial court did not abuse its discretion in applying Rule 11.

In their second point, the Appellants complain the trial court erred in failing to file additional findings of fact and conclusions of law in response to their properly and timely requested additional findings of facts and conclusions of law on the elements of their affirmative defenses. We found that the Appellants were correct and abated the case to the trial court to make the requested findings.[2] The trial court filed these additional findings of facts and conclusions of law, and we requested supplemental briefing from the parties as to these findings.

■■■ The Appellants contend the trial court erred in finding against them on their affirmative defenses. They contend the evidence is legally and factually insufficient to support the trial court's findings. The Appellants pled three affirmative defenses: (a) presentment and demand; (b) notice of default and opportunity to cure; and (c) waiver of timely payment. The Appellants had the burden of proof on their affirmative defenses. The appropriate challenge to a fact-finder's finding concerning an issue on which the complaining party had the burden of proof is either a matter of law point or a great weight and

---

**2.** *See Buzbee v. Buzbee*, 870 S.W.2d 335, 336 (Tex.App.-Waco 1994, no writ), where the same procedure was followed.

preponderance point. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 275–76 (Tex.App.-Amarillo 1988, writ denied).

In reviewing matter of law points, we must examine the record for evidence that supports the finding, ignoring any evidence to the contrary; and, if there is no evidence to support the finding, we must then examine the entire record to determine if a contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001). In reviewing great weight and preponderance points, we must examine the entire record to determine if there is some evidence to support the finding, and then determine whether, in light of the entire record, the finding is manifestly unjust. *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

The Appellants contend the court erred in finding the Breckenridges waived their right to presentment and demand by signing the retail installment contract as guarantors. John signed the contract as purchaser and guarantor, and Shirley signed as joint purchaser and guarantor. The guaranty provision of the contract includes the following language: "The undersigned consent to and waive ... presentment, demand, protest, notice of protest, notice of dishonor and any other conditions to the liability of the undersigned under this guaranty." In its conclusions of law, the trial court found that the Breckenridges waived acceptance, presentment, demand, protest, notice of protest, notice of dishonor, and any other conditions of their liability by executing the guaranty portion of the contract.

The Appellants contend that, despite the language of the guaranty provision, the Breckenridges did not waive their right to presentment and demand. They assert that a strict, narrow reading of the guarantor provision is required because, in the construction of language in a contract, we ordinarily give the language its plain, grammatical meaning. *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 529 (Tex. 1987). The Appellants contend that such a reading of the guaranty provision limits the waiver of the Breckenridges to their role as guarantors and that there is no evidence the Breckenridges waived presentment and demand in their capacity as makers of the contract.

The Appellants further contend the Breckenridges may not simultaneously be makers and guarantors. Their contention is that, because the Breckenridges are already responsible for making payments under the contract as "Purchasers," their execution of the guaranty section is of no effect. They cite *Eubank v. First Nat'l Bank,* 814 S.W.2d 130, 133–34 (Tex.App.-Corpus Christi 1991, no writ); *Dann v. Team Bank,* 788 S.W.2d 182, 184–85 (Tex. App.-Dallas 1990, no writ); and *Johnson v. Nasworthy,* 16 S.W. 758, 759–60, 4 Willson 164 (Tex.Ct.App.1890), for the proposition that a principal obligor under a contract may not act as his or her own guarantor.

However, the Bank sued the Breckenridges generally under the note, thereby suing them in both capacities, as makers and guarantors. The Breckenridges failed to file a verified denial that they were liable under the note in their capacity as guarantors. *See* Tex.R. Civ. P. 93. Failure to verifiably deny liability in a capacity in which a party is sued waives the right to complain on appeal that such party is not liable in that capacity. *Werner v. Colwell,* 909 S.W.2d 866, 870 (Tex. 1995). By failing to file a verified denial that they were liable in the capacity of guarantors, the Breckenridges waived their complaint on appeal that they cannot be liable in that capacity.

In their third point of error, the Appellants contend the trial court erred in finding the Bank did not violate the Truth–in–Lending Act. The Appellants complained the trial court failed to file additional findings of fact and conclusions of law in response to their properly and timely requested additional findings of fact and conclusions of law on the elements of the Truth–in–Lending Act. We found the trial court should have filed these additional findings of fact and conclusions of law, and abated the case to the trial court to make the requested findings. The trial court filed these additional findings of fact and conclusions of law, and we requested supplemental briefing from the parties as to these findings.

The Appellants contend the trial court erred in finding the federal Truth–in–Lending Act does not apply to this case as a matter of law. The trial court held the contract evidences a transaction that is an "exempted transaction" as defined by Section 1603 of the Truth–in–Lending Act.[3] The Truth–in–Lending Act does not apply to "[c]redit transactions, other than those in which a security interest is or will be acquired in real property, or in personal property used or expected to be used as the principal dwelling of the consumer, in which the total amount financed exceeds $25,000." 15 U.S.C.A. § 1603(3) (West 1998). The Appellants contend the trial court erred in holding the transaction was exempt because the Bank has waived this defense by failing to plead it before trial.

The Appellants contend the exemption to the statute is like an affirmative defense that is waived if not affirmatively pled. However, the burden to show that the transaction falls within the Truth–in–Lending Act is on the Appellants in this case. In order to establish the creditor's liability under the Truth–in–Lending Act, the complaining party must show that the disputed transaction is the type of transaction covered by the Act. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 751 (3d Cir. 1974); *Gombosi v. Carteret Mortgage Corp.*, 894 F.Supp. 176, 180 (E.D.Pa.1995), *aff'd without opinion*, 91 F.3d 123 (3rd Cir.1996) (plaintiff bears burden of showing a disputed transaction is covered by Truth–in–Lending Act); *Brekke v. Volcker*, 652 F.Supp. 651, 654 (D.Mont.1987) (plaintiffs failed to allege facts from which court could conclude Truth–in–Lending Act was applicable). "[J]urisdiction depends upon an extension of credit, wherein the underlying transaction qualifies as a consumer credit transaction and not one for 'business

---

**3.** The following exemptions are provided in the Act:

(1) Credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations.

(2) Transactions in securities or commodities accounts by a broker-dealer registered with the Securities and Exchange Commission.

(3) Credit transactions, other than those in which a security interest is or will be acquired in real property, or in personal property used or expected to be used as the principal dwelling of the consumer, in which the total amount financed exceeds $25,000.

(4) Transactions under public utility tariffs, if the Board determines that a State regulatory body regulates the charges for the public utility services involved, the charges for delayed payment, and any discount allowed for early payment.

(5) Transactions for which the Board, by rule, determines that coverage under this subchapter [15 U.S.C.A. § 1601, et seq.] is not necessary to carry out the purposes of this subchapter.

. . . .

(7) Loans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 et seq.).

15 U.S.C.A. § 1603 (West 1998).

or commercial purposes.'" *Gerasta v. Hibernia Nat'l Bank,* 411 F.Supp. 176, 185 (E.D.La.1975), *aff'd in part & rev'd in part on other grounds,* 575 F.2d 580 (5th Cir. 1978); *see* 15 U.S.C.A. §§ 1601, 1602(h).

 The Appellants point to *United States v. First City Nat'l Bank,* 386 U.S. 361, 366, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967), and *Fed. Trade Comm'n v. Morton Salt Co.,* 334 U.S. 37, 44–45, 68 S.Ct. 822, 92 L.Ed. 1196 (1948), in support of their contention the Bank had the burden of proof to show this transaction was exempt under the statute. These cases hold that the general rule is the party who claims the benefits of an exception to the prohibition of a statute bears the burden of proof. *First City Nat'l Bank,* 386 U.S. at 366, 87 S.Ct. 1088; *Morton Salt Co.,* 334 U.S. at 44–45, 68 S.Ct. 822. Both of these cases dealt with situations where the actions of the defendants were generally prohibited by law. *First City National Bank* involved the merger of two banks and whether they were exempt from prohibitions of merging under antitrust laws via an exemption. This is not a case in the Truth–in–Lending Act. As the more recent decision from the Third Circuit holds, the burden is on the plaintiff alleging violation of the Truth–in–Lending Act to show that the transaction is the type covered by the Act. *Katz,* 496 F.2d at 751. The court found the amount financed exceeds $25,000.00; the contract relates to personal property, not real property; and the Breckenridges affirmatively represented that the mobile home acquired was not to be their principal dwelling. The evidence proves the transaction qualifies as an exempt transaction under Section 1603(3).

 In their motion for rehearing, the Appellants correctly point out that the Truth–in–Lending Act is to be construed strictly against creditors and liberally in favor of consumers. *Inge v. Rock Fin.*

*Corp.,* 281 F.3d 613, 621 (6th Cir.2002); *Fairley v. Turan–Foley Imports, Inc.,* 65 F.3d 475, 477, 482 (5th Cir.1995). In *Inge,* the court reversed the district court's finding that the plaintiff had failed to state a claim by holding that the plaintiff had sufficiently pled her cause of action and is limited to an interpretation of Section 1605(f) of the Truth–in–Lending Act. *Inge,* 281 F.3d at 621–22. We find the Bank did not have to plead the transaction's exemption as an affirmative defense and affirm the trial court's finding regarding the Truth–in–Lending Act. Because the Appellants did not attack the merits of the trial court's findings, we need not address whether the trial court's findings regarding the transaction were correct.

We affirm the judgment.