

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00198-CV

MARY T. ARD

APPELLANT

V.

EDWARD R. HUDSON, JR. AND
WILLIAM A. HUDSON, II,
INDIVIDUALLY AND AS CO-
EXECUTORS OF THE ESTATE OF
JOSEPHINE T. HUDSON,
DECEASED, AND AS CO-
TRUSTEES OF THE EDWARD R.
HUDSON TRUST NO. ONE, FROST
NATIONAL BANK, JOSEPHINE
TERRELL ARD RENSCH, AND E.
RANDALL HUDSON III

APPELLEES

----------

FROM PROBATE COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 2002-1286-A-1

----------

## MEMORANDUM OPINION[1]

----------

---

[1]See Tex. R. App. P. 47.4.

This is a probate case involving the children and grandchildren of Edward Hudson Sr. and Josephine Hudson. Appellant is their daughter Mary T. Ard. Sons Edward Jr. and William Hudson II (Bill); grandchildren E. Randall Hudson (Randall), Edward Jr.'s son; and Josephine Terrell Ard (Terrell), Mary's daughter (collectively, the Hudsons); and Frost Bank, a trustee, are Appellees. Frost Bank did not file an appellee's brief. Terrell joined in the brief filed by her uncles Edward Jr. and Bill and cousin Randall.

The immediate dispute in this decades-long feud between brothers and their sister and brother-in-law, Julian Ard, revolves around an *in terrorem* clause, also called a forfeiture clause, in Josephine's will. We hold that as a matter of law, Mary did not trigger the forfeiture clause or the condition precedent therein by suing the Hudsons or by seeking temporary and permanent injunctive relief or the appointment of a receiver within that suit, has not forfeited any benefits under Josephine's will, and has not lost standing under the forfeiture clause or condition precedent to pursue her claims. Mary does not challenge the trial court's conclusion that the Hudsons did not trigger the forfeiture clause. We therefore reverse and remand in part.

## I. Statement of Facts

### A. Background

When Edward Sr. died in 1972, his will disposed of his and Josephine's community estate (including their interest in three mineral trusts) through four trusts—a marital trust for Josephine during her lifetime (Trust 1) and a trust for

each of their children (Trusts 2, 3, and 4). Trust 1 was funded with half of the community estate. The other half of the community estate funded Trusts 2, 3, and 4 for the children. Trust 4 was for the benefit of Mary. The three children were the original co-trustees of the four trusts.

Edward Sr.'s will stated,

> It is contemplated that several trusts shall result under this will but that these trusts, the major assets of which will be oil and gas royalty, mineral, and leasehold interests, shall constitute separate entities administered, however, as far as possible as a single entity for the convenience and economy of the Trustees and beneficiaries alike.

Edward Sr.'s will gave Josephine the power of appointment to direct the distribution of the assets of Trust 1 upon her death.

From the time the trusts were established until 1988, all four beneficiaries took distribution from the trusts, but in differing amounts. The parties offer different versions about how the variances occurred. The Hudsons contend that by 1988, because all the children had received more in distributions than Josephine, the family members therefore entered into a settlement agreement to settle the imbalance. They point to a letter that Edward Jr. wrote in December 1988 to his mother and siblings. In that letter, Edward Jr. stated that each beneficiary had withdrawn "funds from time to time as needed," and the result was "a constant imbalance on the books." In the letter, Edward Jr. rejected a proposal by Mary's attorneys and offered to make certain payments to Bill and Mary to settle the discrepancies. (He had withdrawn the largest amount.)

Mary points to an April 1988 letter written by Bill to her attorneys. In that letter, Bill painted a different picture. He stated that the first distributions to the trusts set up under Edward Sr.'s will were $2,493.66 to Josephine's trust, $5,000 to Bill's trust, $5,000 to Mary's trust, and $10,000 to Edward Jr.'s trust, and that this distribution pattern continued until he confronted Edward Jr. about it in 1982. Bill said that Edward Jr.'s actions showed "no apparent attempt" to follow the terms of their father's will. In the letter, Bill stated that neither Josephine nor Mary wished to take any action against Edward Jr. at that time.

The letter detailed various discrepancies and problems with Edward Jr.'s handling of the family business and trust property. Bill stated in the letter that due to Edward Jr.'s actions, "[i]t w[ould] be over [Bill's] dead body before Eddie [would] get[] into the position [to have] any control over any Trust income. [Bill thought Edward Jr.] ha[d] amply demonstrated a total lack of any reasonable ability to exercise control over the Trust[']s money."

In 1988, the trusts were allegedly equalized, although Mary doubted whether the shortfall resulting to her trust by Edward Jr.'s excess withdrawals was fully repaid, and Josephine was appointed as an additional co-trustee. Four years later, pursuant to a family agreement, Mary resigned as co-trustee of Trusts 1, 2, and 3, and her mother and brothers resigned as co-trustees of Trust 4, leaving Mary as its sole trustee.

Josephine died in 2002. In her will, she exercised the power of appointment in Trust 1 so that at her death, Trust 1 would terminate and its

4

assets would become part of her estate. Edward Jr. and Bill were named co-executors of Josephine's estate. At the time of these trial court proceedings more than ten years after Josephine's death, they had not completed the winding up of Trust 1.

Josephine's will originally contained a clause to disinherit any beneficiary who instituted or joined litigation (except as a party defendant) "for anything that has happened or been omitted prior to the date of this Will regarding [Trust 1] . . . (regardless of whether or not such proceeding is instituted in good faith and with probable cause)." Josephine removed that clause by codicil in 1997. Unlike her husband's will, Josephine's did not contain a clause promoting the commingling of assets.

But her final will did include a forfeiture clause, and that clause is at the center of this dispute. The clause states:

> 7.1 Forfeiture. If any beneficiary hereunder shall contest the probate or validity of this Will or any provision thereof, or shall institute or join in (except as a party defendant) any proceeding to contest the validity of this Will or to prevent any provision thereof from being carried out in accordance with its terms (regardless of whether or not such proceedings are instituted in good faith and with probable cause), then all benefits provided for such beneficiary are revoked and such benefits shall pass to the non-contesting residuary beneficiaries of this Will in the proportion that the share of each such non-contesting residuary beneficiary bears to the aggregate of the effective (non-contesting) shares of the residuary. . . . Each benefit conferred herein is made on the condition precedent that the beneficiary shall accept and agree·to all provisions of this Will.

Josephine's will devised her residual estate in three equal shares. One-third went to Bill outright, one-third went to Edward Jr. outright, and the final third

5

was devised to Mary in trust (Trust 5) during her lifetime, with a remainder to Terrell. In her will, Josephine named Overton Bank and Trust (now Frost National Bank) the trustee of Trust 5, but Trust 5 was not funded by the time of summary judgment proceedings more than ten years after Josephine's death. The parties agree that Frost Bank declined to accept "any of the assets constituting the one third of the Estate" to fund Trust 5 until resolution of the suit that Mary had brought. Josephine's will was admitted to probate in May 2002, the month following her death, but Mary did not file suit until February 2005. It is not clear why Trust 5 was not funded before Mary filed suit.

After Josephine's death, Mary requested, but did not receive, multiple accountings from her brothers, and they tried but failed to obtain a guardianship over her person and estate, charging the legal fees involved to her share of the estate, and paying the estate back only after her agent discovered it.

## B. Litigation

In 2005, Mary sued her brothers in probate court, both individually and in their capacities as co-executors and co-trustees, alleging claims for breach of fiduciary duty. By the summer of 2010, Randall and Terrell were added to the litigation. Mary alleged defects in the estate accounting and complained that the Hudsons had failed to provide her sufficient information, mismanaged estate assets, and engaged in self-dealing transactions. She pled that she did not contest Josephine's will or seek to invalidate any provision of it, "but rather [sought] enforcement of her rights under [Josephine's] Will and which belong to

6

her under state law." Mary also sought a declaratory judgment that her lawsuit would not trigger the forfeiture clause.

In a separate suit in district court, Mary sought to compel an accounting of Trust 1. This lawsuit was transferred and consolidated with the pending probate court suit. Mary moved for injunctive relief, alleging that the Hudsons had failed to distribute the assets from Trust 1 to the beneficiaries and were instead using estate assets to drill high-risk, speculative oil and gas wells. She asked the court to restrain the Hudsons from using additional estate funds to drill speculative high-risk oil and gas wells, among other activities. She sought to have thirteen actions enjoined, including:

> . . . ;
>
> 6. Agreeing to participate in the drilling of any new wells;
>
> 7. Agreeing to participate in the reworking, recompleting, deepening, or sidetracking of any well that commits the Estate; provided, however, that in case of explosion, fire, flood or other sudden emergency, [the Hudsons] may take such steps and incur such expenses as in its opinion are required to deal with the emergency to safeguard life and property, shall report the emergency to the Court within 48 hours;
>
> 8. Selling, leasing, exchanging, or transferring any assets or interests of the Estate;
>
> 9. Acquiring or purchasing any interest in any real or personal property;
>
> 10. Taking any action other than action necessary to wind up the Estate administration;
>
> 11. Commingling assets of the Estate with assets of the Respondents or any affiliate of Respondents;

7

12. Expending Estate funds to pay attorney's fees and costs incurred by Respondents, or their affiliates in this or any other proceeding; and

13. Expending Estate funds to reimburse or pay any amounts alleged to be due to Respondents or their affiliates.

The probate court held a hearing on the request for injunctive relief in December 2005 but continued the hearing without a ruling.

In September 2006, Mary filed an amended motion for temporary injunctive relief. Like her previous motion, this motion was made subject to her request for a declaratory judgment construing the forfeiture clause in Josephine's will. She alleged that rather than winding up Trust 1 upon Josephine's death, Edward Jr. and Bill "bought and sold Trust assets, drilled new wells and committed the Trust to additional contractual liabilities and duties without making any disclosures to the beneficiaries of the Trust and without the informed consent of the Beneficiaries." She asked for the same thirteen actions to be enjoined as in her previous motion.

Based on Mary's motion for temporary injunction, the Hudsons moved for summary judgment on the ground that she had violated the forfeiture clause and therefore had forfeited her inheritance. In December 2006, the trial court denied the motion after a hearing.

Mary then amended her pleadings to add more alleged breaches of fiduciary duty by the Hudsons, including that they had commingled estate funds

8

with their personal funds and funds of entities they controlled. She sought to remove the Hudsons as executors.

A court-appointed independent auditor filed his report regarding the Hudsons and their management of Trust 1 and the estate assets. The parties rely on different portions of this report. Edward Jr. and Bill's brief focuses on the part of the report relating to one of the nine actions the auditor was ordered to perform. Specifically, the report states that in reconciling monthly revenues and monthly expenses with the annual summary of joint interest billing statements from 2002 through 2009, the court-appointed auditor found "[t]he monthly reconciliations of revenues and severance taxes properly agreed with the annual summaries with no exceptions." Mary, on the other hand, emphasizes in her reply brief the auditor's conclusion:

> We were not engaged to and did not conduct an examination, the objective of which would be the expression of an opinion regarding the transactions and accounts noted above. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

In December 2011, the Hudsons filed a second partial motion for summary judgment based on Mary's alleged violations of the forfeiture clause, combining traditional and no-evidence grounds. The Hudsons contended that they were entitled to summary judgment as a matter of law on their requests for declaratory relief and affirmative defenses. Their four grounds for summary judgment, which they characterize as "specific" and "independent" are:

9

1. Mary violated the forfeiture clause by seeking injunctive relief to prevent her brothers from administering the estate, particularly the exploration and production of oil and gas properties, in accordance with Josephine's wishes;

2. As a result of Mary's violation of the forfeiture clause, she automatically relinquished any benefits under Josephine's will as of the date Mary filed her request for injunctive relief, and Mary lost all standing as a beneficiary, with all benefits instead flowing to noncontesting beneficiaries;

3. There is no evidence that Mary acted with good faith when she sought injunctive relief;

4. Alternatively, Mary's actions in violation of the forfeiture clause resulted in a failure of the "condition precedent that the beneficiary shall accept and agree to all provisions of this Will."

The Hudsons further moved for summary judgment on Mary's declaratory judgment claim that the Hudsons had violated the forfeiture clause. (Mary does not raise an appellate challenge to the trial court's summary judgment for the Hudsons on this claim.)

In March 2012, after taking the Hudsons' depositions, Mary filed five motions (also known as the "New Motions") alleging additional fiduciary duty breaches by the Hudsons and seeking (1) the appointment of a receiver to administer Josephine's estate pending the outcome of the litigation; (2) a temporary successor trustee to administer Trust 1 pending the outcome of litigation; (3) to prevent the Hudsons from paying from the estate their interim attorney's fees to defend the breach of fiduciary duty lawsuit; (4) to prevent the Hudsons from continuing to pay any of Randall or Terrell's attorney's fees from the estate or Trust 1; and (5) an accounting.

10

The Hudsons then supplemented their second summary judgment motion based on the forfeiture clause to allege that Mary's motions further violated the forfeiture clause. The Hudsons alleged in that supplemental motion that Mary's claims related to Josephine's estate and Trust 1 fail as a matter of law because

1. Mary lost all standing as a beneficiary of the will.

2. Mary violated the forfeiture clause by seeking injunctive relief to prevent her brothers from administering the estate, particularly the exploration and production of oil and gas properties, in accordance with Josephine's testamentary wishes. This includes but is not limited to precluding continued investment in new wells on leases in which the estate has an interest.

3. Mary also violated the forfeiture clause with her new motions by seeking to suspend her brothers as co-trustees of Trust 1 and to greatly limit what the Temporary Successor Trustee is allowed to do, as well as seeking a receiver over the Estate, in direct violation of Josephine's clear testamentary intent.

4. As a result of her violations of the forfeiture clause, Mary automatically relinquished any benefits under the will, including those related to Trust 1 assets, when she filed her request for injunctive relief and lost all standing as a beneficiary of the will.

5. There is no evidence of good faith or probable cause when she sought injunctive relief to prevent Josephine's will from being carried out according to its terms.

The trial court held a hearing on the Hudsons' second partial motion for summary judgment as supplemented on May 16, 2012. On October 12, 2012, the trial court issued a letter to the parties stating that because it believed that its ruling would "either [be] dispositive of or obviate[] any remaining pending motions," the court was "declining to rule further at th[at] time."

11

A year after the summary judgment hearing, on May 6, 2013, the trial court signed an order granting the Hudson's live forfeiture motion for partial summary judgment based on the forfeiture clause "in full." The trial court reasoned that the effect of Mary's October 31, 2005 filing of suit with requests for temporary restraining order and temporary and permanent injunctive relief, subject to a petition for declaratory relief, and her March 12, 2012 filing seeking appointment of a receiver, subject to no petition for declaratory relief, were intended "to prevent provisions of the will from being carried out according to its terms." The trial court concluded that the March 12, 2012 filing violated the forfeiture clause and that Mary thereby forfeited her rights under the will.

The trial court held (1) that the Hudsons had established as a matter of law their affirmative defense that Mary's actions violated the forfeiture clause and their counterclaim for declaratory judgment; (2) that the benefits forfeited by Mary as a result of her violation of the forfeiture clause automatically passed and shall pass to her brothers and the Trustee of Trust 5, of which Mary is no longer a beneficiary and Terrell is now the primary beneficiary; (3) that Mary's actions resulted in the failure of the will's "condition precedent" to any right of inheritance for her; and (4) that all her claims except attorneys' fees claims, which were severed in the same order, were dismissed with prejudice. The order does not mention standing.

The order's severance of Mary's and the Hudsons' claims for attorney's fees made the partial summary judgment final. On the Hudsons' motion, the probate court signed a modified order to award costs against Mary.

Mary filed a motion for new trial, which was not expressly ruled on by the probate court. Mary timely appealed.

## II. Analysis

### A. The Parties' Issues

In her six issues, Mary contends that (1) a beneficiary has the inherent right to sue her executors and trustees for breaches of their fiduciary duties without triggering a forfeiture clause; (2) because forfeiture clauses are strictly construed, a beneficiary does not forfeit her inheritance when the forfeiture clause does not expressly prohibit her actions; (3) a beneficiary does not forfeit her inheritance when her actions seek to enforce rather than vary the terms of the will; (4) a beneficiary does not violate a forfeiture clause when she sues executors and trustees in good faith and with probable cause; (5) a beneficiary satisfies the conditions precedent to obtain her inheritance when she expressly accepts the provisions of a will; and (6) the probate court erred by granting the Hudsons' motion for partial summary judgment.

In their six "reply and cross points," the Hudsons contend that (1) the probate court properly granted summary judgment; (2) Mary's repeated attempts to prevent her brothers from drilling wells on the estate's oil and gas properties violated the no-interference clause; (3) the no-interference clause should be

13

enforced in light of Mary's attempts to interfere with the co-executor powers granted to her brothers in the will; (4) Josephine's declaration in her will that "good faith and probable cause" would not excuse interference should be honored; (5) alternatively, Mary's efforts to interfere with her brothers lack good faith and probable cause as a matter of law; and (6) Mary's refusal to accept the will's express grant to her brothers of unfettered authority to participate in oil and gas ventures on behalf of the estate violated the condition precedent that beneficiaries accept and agree to all provisions of the will.

## B. Standard of Review

In a traditional summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[2] We review a summary judgment de novo.[3]

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[4] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors

---

[2]Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[3]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[4]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

14

could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[5] We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented.[6] If uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.[7]

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[8] A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.[9] To accomplish this, the defendant-movant

---

[5]*Mann Frankfort*, 289 S.W.3d at 848.

[6]*See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

[7]Tex. R. Civ. P. 166a(c); *Morrison v. Christie*, 266 S.W.3d 89, 92 (Tex. App.—Fort Worth 2008, no pet.).

[8]*City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

[9]*Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see* Tex. R. Civ. P. 166a(b), (c).

must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.[10]

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[11] Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue.[12]

Questions of law are appropriate matters for summary judgment.[13]

## C.  As a Matter of Law, Mary Did Not Trigger the Forfeiture Clause

In her first issue, Mary contends that claims alleging breach of fiduciary duty do not invoke an analysis of forfeiture clauses because a beneficiary has an inherent right to bring such claims.  Thus, she challenges the trial court's conclusion that the Hudsons proved their affirmative defense that she triggered the forfeiture clause as a matter of law.  The Hudsons agree that "seeking an accounting or filing claims for fiduciary-duty breaches [did not] trigger[] the No-Interference Clause."  Instead, they argue here and argued in the trial court in

---

[10]*Chau*, 254 S.W.3d at 455; *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

[11]*Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

[12]*Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999).

[13]*Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999).

their "Second Motion for Partial Summary Judgment" and supplement that Mary's requests for temporary and permanent injunctive relief and her motions to suspend her brothers as co-trustees and to appoint a receiver triggered the clause. But Mary contends that her requests for injunctive relief and motions to suspend her brothers as co-trustees and to appoint a receiver "were procedural vehicles filed in furtherance of the underlying breach of fiduciary duty lawsuits, filed to preserve the status quo pending final resolution," citing *Butnaru v. Ford Motor Co*,[14] and that they likewise did not trigger the clause. We agree.

Whether a forfeiture clause is triggered is a question of law.[15] A breach of a forfeiture clause will be found only when the beneficiary's or devisee's actions fall clearly within the express terms of the clause.[16]

As we recently explained,

> In terrorem [or forfeiture] clauses are intended to dissuade beneficiaries under a will or trust from filing vexatious litigation, particularly as among family members, that might thwart the intent of the grantor by making the gifts under the instrument conditional on the beneficiaries not challenging the validity of the instrument. In terrorem clauses are strictly construed to avoid forfeiture when

---

[14]84 S.W.3d 198, 204 (Tex. 2002) ("A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits.").

[15]*In re Estate of Cole*, No. 02-13-00417-CV, 2015 WL 392230, at *8 (Tex. App.—Fort Worth Jan. 29, 2015, no pet.) (mem. op.); *Ferguson v. Ferguson*, 111 S.W.3d 589, 598–99 (Tex. App.—Fort Worth 2003, pet. denied).

[16]*Badouh v. Hale*, 22 S.W.3d 392, 397 (Tex. 2000); *Cole*, 2015 WL 392230, at *8; *Ferguson,* 111 S.W.3d at 599.

17

possible. Thus, courts have enforced in terrorem clauses only when the intention of a suit is to thwart the grantor's intention.[17]

"An action to remove a trustee, like an action to remove an executor, is not an effort to vary the grantor's intent."[18] We join our sister courts in holding that a beneficiary has an inherent right to challenge the actions of a fiduciary and does not trigger a forfeiture clause by doing so.[19] But that inherent right would be worthless absent the beneficiary's corresponding inherent right to seek protection during such an ongoing challenge of what is left of his or her share of the estate or trust assets, and any income thereon, that the testator or grantor, as the case may be, intended the beneficiary to have. We therefore also hold that a beneficiary exercising his or her inherent right to challenge a fiduciary may seek injunctive and other relief, including the appointment of a receiver, from the trial court to protect what the testator or grantor intended the beneficiary to have without triggering the forfeiture clause.

---

[17]*In re Estate of Boylan*, No. 02-14-00170-CV, 2015 WL 598531, at *2 (Tex. App.—Fort Worth Feb. 12, 2015, no pet.) (mem. op.) (citations and internal quotation marks omitted).

[18]*Conte v. Conte*, 56 S.W.3d 830, 833 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

[19]*See, e.g.*, *Lesikar v. Moon*, 237 S.W.3d 361, 370–71 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *McLendon v. McLendon*, 862 S.W.2d 662, 679 (Tex. App.—Dallas 1993, writ denied), *disapproved on other grounds*, *Dallas Mkt. Ctr. Dev. Co. v. Liedeker*, 958 S.W.2d 382 (Tex. 1997), *overruled on other grounds*, *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 840 & n.9 (Tex. 2001).

Consequently, we hold that Mary did not trigger the forfeiture clause by seeking injunctive relief and a receiver during the pendency of her lawsuit against the Hudsons. We therefore hold that the Hudsons failed to prove as a matter of law that Mary triggered the forfeiture clause. To the extent that the trial court granted summary judgment based on its contrary conclusion that the Hudsons proved as a matter of law that Mary triggered the clause, the summary judgment was in error. We sustain Mary's first issue and reject the Hudsons' second and third "[r]eply and [c]ross points." We do not reach Mary's second, third, and fourth issues or the Hudsons' fourth and fifth "[r]eply and [c]ross points" because those issues and points presuppose that the forfeiture clause was triggered.

## D. The Condition Precedent Likewise Fails as a Matter of Law.

The last line of the forfeiture provision in Josephine's will provides, "Each benefit conferred herein is made on the condition precedent that the beneficiary shall accept and agree to all provisions of this Will." In her fifth issue, Mary asserts that a beneficiary satisfies the conditions precedent to obtain her inheritance when she expressly accepts the provisions of a will. She contends that because she did not violate the forfeiture clause, she likewise did not violate the condition precedent language, incorporating all her arguments regarding the forfeiture clause. She further contends that she sought to enforce the will through her litigation and expressly agreed to its terms, thereby implicitly concluding that she complied with the condition precedent. The Hudsons contend that this requirement is an executory limitation separate and distinct from

19

the forfeiture clause and that Mary's actions resulted in its failure. They argue that Mary is therefore divested of her inheritance.

In her reply, Mary points out that the condition precedent language is form language included in many forfeiture clauses, whether as opening statements or concluding statements.[20] The language merely repeats the testator's intent to condition bequests on compliance with the forfeiture clause. A forfeiture clause conditions a bequest on a beneficiary not disrupting the will or trust.[21]

We construe the condition precedent language located within the forfeiture clause to be consistent with the forfeiture clause as a whole.[22] Thus, based on the same reasoning guiding our decision that the forfeiture clause was not triggered, we hold that as a matter of law, the condition precedent language within the forfeiture clause was not triggered by Mary's challenges to her brothers as co-trustees and co-executors. Her challenges go only to the alleged conduct and the results of the alleged conduct of the Hudsons. She has an inherent right

---

[20]*See, e.g.*, *Lesikar*, 237 S.W.3d at 370; *In re Estate of Schiwetz*, 102 S.W.3d 355, 365 (Tex. App.—Corpus Christi 2003, pets. denied); *Sheffield v. Scott*, 662 S.W.2d 674, 675 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Dulak v. Dulak*, 496 S.W.2d 776, 781 (Tex. App.—Austin 1973), *rev'd in part on other grounds*, 513 S.W.2d 205 (Tex. 1974).

[21]*DiPortanova v. Monroe*, 402 S.W.3d 711, 715 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *In re Estate of Hamill*, 866 S.W.2d 339, 341 n.1 (Tex. App.—Amarillo 1993, no pet.).

[22]*See In re Estate of Tyner*, 292 S.W.3d 179, 182 (Tex. App.—Tyler 2009, no pet.).

to challenge her brothers' fiduciary conduct. The Hudsons have therefore failed to prove this summary judgment ground as a matter of law. We sustain Mary's fifth issue and reject the Hudson's sixth "[r]eply and [c]ross [p]oint."

### E. Mary Has Not Lost Standing by Virtue of Her Actions

The Hudsons contend that Mary "lost all standing to bring her lawsuit, a result of disinheritance she has not contested on appeal," and that she "raises no appeal point asserting some residual standing even after her disinheritance." Our discussion of this contention is limited to the standing argument brought in the Hudsons' second partial summary judgment motion based on the forfeiture clause and the trial court's ruling thereon. We do not address the Hudsons' summary judgment motion based on other standing arguments (or, for that matter, its summary judgment motion based on limitations grounds) that the trial court has not yet ruled on.

While Mary did not raise a specific issue on standing, she challenged the summary judgment against her and recognized its effect on her standing. Mary noted the Hudsons' standing ground in her statement of facts, and in her analysis, she stated,

> All of Defendants' Grounds for Summary Judgment as listed above are based on the same argument—that Mary T violated the *in terrorem* clause in her mother's will and as a result, is no longer a beneficiary with standing to pursue her claims. Mary T's arguments below, therefore, respond to all of Defendants' Grounds for Summary Judgment.

21

We have held that the Hudsons failed to prove the grounds on which they and the trial court based Mary's disinheritance as a matter of law. Because neither the forfeiture clause nor the condition precedent language therein was triggered, any automatic disinheritance was void from its inception, and Mary remains a beneficiary with no interruption. She therefore had and has standing to continue her lawsuit. Even if Mary had not mentioned standing in her brief, standing cannot be waived.[23] We sustain Mary's sixth issue, and we reject the Hudsons' first "[r]eply and [c]ross [p]oint."

## III. Conclusion

Mary does not challenge the trial court's judgment against her as to her claim that the Hudsons violated the forfeiture clause. That part of the trial court's judgment stands. But having sustained Mary's first, fifth, and sixth issues, which are dispositive, we reverse the remainder of the trial court's judgment and remand this case to the trial court for proceedings consistent with this opinion.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DELIVERED: August 20, 2015

---

[23] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993).